MARY E. WHITEHEAD et al., Respondents, *v.* THE NEW YORK LIFE INSURANCE COMPANY, Appellant.

Where a husband procures a policy of insurance upon his life for the benefit of his wife, or in case of her death before his, of their children, in procuring it and in doing whatever is necessary to perfect and continue the rights of the assured, he acts simply as their agent, and by force of the statute authorizing such insurance (Chap. 80, Laws of 1840) they acquire a vested interest in the policy at the moment of its delivery to the insured; and this although no knowledge of the existence of the policy comes to them until after his death ; their claim to the fruits of the insurance is a ratification of the act by which it was obtained.

The assured, therefore, acquire and hold their ownership irrespective of the question whether the policy has been actually delivered to them.

*Bickerton* v. *Jaques* (28 Hun, 119), distinguished.

The husband has no authority without the assent of the assured to surrender the policy; such an act is not within the scope of the agency inferable from the taking out of the policy by him.

Where, however, such a policy had been forfeited by its terms, by the nonpayment of premiums, and thereafter the husband, in consideration of a sum paid, surrendered it. *Held,* that the forfeiture was not waived by the surrender; that the assured could not repudiate the surrender and at the same time seek a benefit under it as revival of the forfeited policy.

*Also held,* that evidence was incompetent of admissions by the insurer of the existing validity of the policy where it appeared that they would not have been made except for the agreement to surrender, and were conditional thereon.

But where a policy in full force was surrendered by the husband without the assent of the assured, and no notices were thereafter sent by the company either to the insured or the assured, *held,* that the subsequent failure to pay the accruing premiums did not alone work a forfeiture; that by the agreement of surrender the insurance company did an act, the tendency and purpose of which was to prevent future payments by the parties interested, and the company cannot defend upon a default to which its own wrongful act contributed, and but for which a lapse might not have occurred; and that the company was liable.

The recovery upon such a policy is not limited to the surrender value of the policy; the assured are entitled to recover the sum insured less the unpaid premiums, with interest thereon.

*It seems* that the husband is the agent of the assured for the purpose of receiving notices of premiums falling due. .

Such a notice is equivalent to a demand of the premium.

*Whitehead* v. *N. Y. L. Ins. Co.* (33 Hun, 425), reversed.

(Argued March 12, 1886; decided April 13, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made the first Monday of March, 1884, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term. (Reported below, 33 Hun, 425.)

This action was brought to have the surrender and transfers of three policies of insurance upon the life of George Davis, the father of the plaintiffs, set aside and declared void and to have the policies declared valid and subsisting obligations of the defendant, in full force and effect at the time of

the death of George Davis, and to recover the amount of the policies, less unpaid premiums. Each of the policies specified that it was issued in consideration of a sum stated, paid by Mary A. Davis, wife of the insured, and the sum assured was to be paid to her or her personal representatives. In one of the policies, marked "policy A," it was specified that in case she died before the insured, the insurance should vest in the heirs of the insured. In and by the other two policies in case of such death the insurance was to vest in his children. Each of the policies contains the clause that in case Mary A. Davis shall not pay the premiums on or before the several days mentioned for the payment thereof, then the company shall not be liable for the payment of the sum insured or any part thereof, and the policy shall cease and determine. Mary A. Davis died before her husband, who, without the knowledge or consent of the plaintiffs, surrendered to the defendant all of said policies in consideration of sums paid to him upon each surrender. Policy A, previous to its surrender, had been forfeited by non-payment of premiums; the other two were in full force. Neither of the plaintiffs knew of the existence of the policies, or of either of them, or of their surrender to the company by their father, until after his death. In October, 1879, notice was given to the company of the death of George Davis, and before the commencement of this action the plaintiffs offered to pay the premiums unpaid upon the policies, according to their terms, and to furnish the company with proofs of the death of the insured, but the company refused to accept the premiums, asserting that the policies had been purchased by them and were no longer in force.

*William B. Hornblower* for appellant. No ground for equitable relief from the forfeiture of the policy " A " is shown. (*Klein* v. *Ins. Co.*, 104 U. S. 88; *N. Y. L. Ins. Co.* v. *Statham*, 93 id. 24; *Thompson* v. *Ins. Co.*, 104 id. 252; *Roehner* v. *Knickerbocker L. Ins. Co.*, 63 N. Y. 160, 167; *Evans* v. *U. S. L. Ins. Co.*, 64 id. 304; *In re Att'y-Gen'l* v. *Continental L. Ins. Co.*, 93 id. 70; *Wheeler* v. *Conn. Mut. L. Ins. Co.*,

82 id. 543, 550 ; *Douglass* v. *Knickerbocker L. Ins. Co.*, 83 id. 504.) The defendant did not waive the forfeiture of this policy by accepting its surrender after it had elapsed. (*Robinson* v. *Met. L. Ins. Co.*, 88 N. Y. 545 ; *Underwood* v. *Farmers' Joint-Stock Ins. Co.*, 57 id. 500 ; *Ripley* v. *Ætna Ins. Co.*, 30 id. 136 ; *Diehl* v. *Adams Mut. Ins. Co.*, 58 Penn. St. 452 ; *Bennecke* v. *Ins. Co.*, 105 U. S. 350 ; *Muhleman* v. *Nat. Ins. Co.*, 6 W. Va. 518 ; *Stolle* v. *Ætna Ins. Co.*, 6 Ins. Law Jour. 783 ; *Baker* v. *United Mut. Ins. Co.*, 43 N. Y. 284 ; *Mut. L. Ins. Co.* v. *Wolff*, 15 Alb. Law Jour. [Supr. Ct. U. S.] 435.) When applied to personal property, the word " heirs " is usually held to be equivalent to " next of kin," and as thus used, it would, of course, embrace brothers and sisters in the absence of children. (*Gittings* v. *McDermott*, 2 Myl. & K. 69 ; *In re Newton's Trusts*, L. R., 4 Eq. 171 ; *Wingfield* v. *Wingfield*, L. R., 9 Ch. Div. 658 ; *In re Steven's Trusts*, L. R., 15 Eq. 110 ; *In re Phillips' Will*, L. R., 7 Eq. 151 ; *Welsh* v. *Carter*, 32 N. J. Eq. 177 ; *Ferguson* v. *Stewart*, 14 Ohio, 140 ; *Hascall* v. *Cox*, Mich. Supr. Ct., Oct. 1882.) Until the death of the insured, his heirs, or next of kin, had no such vested interest in the policy as to prevent him from surrendering it. (*Needham* v. *Smith*, 4 Russ. 318, 323 ; *Teed* v. *Morton*, 60 N. Y. 506 ; *Delaney* v. *McCormack*, 88 id. 174 ; *Godfrey* v. *Davis*, 6 Ves. Jr. 43 ; *Campbell* v. *Rawdon*, 18 N. Y. 412 ; *Jenkins* v. *Freyer*, 4 Paige, 47 ; *Lorillard* v. *Coster*, 5 id. 172 ; 2 Jarman on Wills, 154, 156 ; 2 Redfield on Wills, 10 ; *Cushman* v. *Horton*, 59 N. Y. 149 ; *Norris* v. *Lautz*, 18 Md. 260, 269 ; *Vaughn* v. *Vanderstegen*, 2 Drew. 165, 188 ; *Musick* v. *Dodson*, 76 Mo. 614 ; *Robinson* v. *Robinson*, 11 Bush, 174, 179 ; *Huntley* v. *Whetner*, 77 N. C. 392, 393 ; *Baker* v. *Un. Mut. L. Ins. Co.*, 43 N. Y. 287 ; *Brummer* v. *Cohn*, 86 id. 14 ; *Olmsted* v. *Keyes*, 85 id. 601, 602.) The clause in the policy providing that the insurance should vest in the " heirs of the insured," in case Mary A. Davis should die before her husband, is void because of the absence of an insurable interest to support it. (*Eadie* v. *Slimmon*, 26 N. Y. 17 ; *Barry* v. *Equitable L. Ass. Co.*, 59 id. 592 ; *Moehring* v. *Mitchell*, 1 Barb. Ch. 264 ; *Jenkins*

v. *Freyer*, 4 Paige, 47 ; *Wyman* v. *Wyman*, 26 N. Y. 255 ; *Wyman* v. *Prosser*, 36 Barb. 371.)    There is no rule of law requiring the insured to continue to pay premiums on a policy. (*Landrum* v. *Knowles*, 22 N. J. Eq. 594 ; *Bickerton* v. *Jaques*, 28 Hun, 119 ; *Gambs* v. *Covenant Mut. L. Ins. Co.*, 50 Mo. 44 ; *Rison* v. *Wilkinson*, 3 Sneed, 565 ; *Union Mut. L. Ins. Co.* v. *Stevens*, U. S. Cir. Ct., N. D. Ill., Chicago Legal Notes, Dec. 29, 1883.)    Davis having retained possession of the policies, and paid the premiums thereon, was under no legal obligation to continue to pay the premiums, but could cease to pay the premiums, and could surrender the policies to the company for their money value.    (*Ricker* v. *Charter Oak L. Ins. Co.*, 27 Minn. 193 ; *Foster* v. *Gile*, 50 Wis. 603 ; *Clark* v. *Durand*, 12 id. 223 ; *Kerman* v. *Howard*, 23 id. 108 ; *Bowers* v. *Parker*, 58 N. H. 565 ; *Stillwell* v. *Mut. L. Ins. Co.*, 72 N. Y. 385.)    Even if the surrender of any of these policies was unlawful, they have nevertheless lapsed by their terms for non-payment of premiums.    (*Att'y-Gen'l* v. *Guardian Mut. L. Ins. Co.*, 91 N. Y. 655.)    A party who desires to rescind or repudiate a transaction is bound to act promptly on discovery of the facts.    (2 Pars. on Cont. 681 ; 2 Chitty on Cont. [11th Am. ed.] 1092 ; Addison on Cont. [Am. ed. by Morgan], § 312 ; *Masson* v. *Boret*, 1 Denio, 69.)    The ignorance of the plaintiff as to the policies does not relieve them from the effect of the default in payment of premiums.    (*Klein* v. *N. Y. L. Ins. Co.*, 104 U. S. 88.)

*C. Elliott Minor* for respondents.    Equity will give relief where a policy has lapsed for non-payment of premium in cases of fraud, accident, mistake, ignorance, impossibility or necessity. (*Douglass* v. *Knick. L. Ins. Co.*, 83 N. Y. 504 ; *Wheeler* v. *Conn. Mut. L. Ins. Co.*, 82 id. 552 ; *Cohen* v. *N. Y. Mut. L. Ins. Co.*, 50 id. 610 ; *Sands* v. *N. Y. L. Ins. Co.*, id. 625.) Any act of omission or commission contrary to legal or equitable duty, trust or confidence justly reposed, and which is injurious to another, although it falls short of moral fraud, is, in the sense of a court of equity, within its remedial jurisdiction.

(Willard's Eq. Jur. 147, 148; *Belcher* v. *Belcher*, 1 Yerg. [Tenn.] 121; *Waterbury* v. *Sturtevant*, 18 Wend. 353–362; *Jackson, dem. Cadwell*, v. *King*, 4 Cow. 219; *Tabor* v. *Mich. Mut. L. Ins. Co.*, Law Jour. 97; *Babcock* v. *Eckler*, 24 N. Y. 632.) It was in violation of defendant's duty to perform its contracts for it to purchase its own liabilities. (2 Kent's Com. 478; *Budd* v. *Monroe*, 18 Hun, 316; *Barnard* v. *Campbell*, 55 N. Y. 457; *Williamson* v. *Brown*, 15 id. 362; *Baker* v. *Bliss*, 39 id. 174; *Reed* v. *Gannon*, 50 id. 350; *Cambridge Bk.* v. *Delano*, 48 id. 340; *Peabody.* v. *Fenton*, 3 Barb. Ch. 464; *Reed* v. *Gannon*, 50 N. Y. 352; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, id. 83, 84; *Pitney* v. *Leonard*, 1 Paige, 461; *Hawley* v. *Cramer*, 4 Cow. 722; *Voorhees* v. *Presb. Church*, 8 Barb. 135.) A note payable upon its face to a guardian or agent affords notice that the obligation belongs to the ward or principal, and a holder can acquire no rights adverse to a ward or principal. (Bigelow on Fraud, 297; *McMasters* v. *Dunbar*, 2 La. Ann. 577; *Nicholson* v. *Jacobs*, id. 666; *Louisiana Bk.* v. *New Orleans*, 3 id. 294; *Holmes* v. *Carman*, 1 Freem. Ch. 408; *Miller* v. *Helm*, 2 L. & M. 687; *Davis* v. *Henderson*, 25 Miss. 459; *Livermore* v. *Johnson*, 27 id. 284; *Cook* v. *Travis*, 20 N. Y. 402; *Acer* v. *Westcott*, 46 id. 309; *Ware* v. *Egmont*, 31 Eng. L. & Eq. 77, 89; *Briggs* v. *Davis*, 20 N. Y. 15, 24; *Swartout* v. *Curtis*, 4 id. 415; *Cambridge Valley Bank* v. *Delano*, 48 id. 336.) In sales by executors, administrators or trustees there is no implied warranty of title, and the vendee buys at his peril. (*Mockbee* v. *Gardner*, 2 Har. & Gill, 176; *Ricks* v. *Delahanty*, 8 Porter, 133; *Forsythe* v. *Ellis*, 4 J. J. Marsh. 298; *Prescott* v. *Holmes*, 7 Rich. Eq. 9; *Brigham* v. *Maxey*, 15 Ill. 295; *Blood* v. *French*, 9 Gray, 197.) Where one of two innocent parties must suffer for the fraud of a third, the loss shall fall on him who has enabled such third person to do the wrong. (*Covil* v. *Hill*, 3 Denio, 328; *Root* v. *French*, 13 Wend. 572; *Tuckborrow* v. *Mason*, 2 T. & R. [D. & C.] 70; *East India Co.* v. *Tritton*, 3 B. & C. 289; Broom's Maxims [4th ed.], 456; *Barnard* v. *Campbell*, 55 N. Y. 462.) It is immaterial who paid the

premiums. (*Stillwell* v. *Mer. L. Ins. Co.*, 72 N. Y. 388; *Eadie* v. *Slimmon*, 26 id. 9; *Barry* v. *Brune*, 59 id. 587; *S. C.*, 71 id. 261; Bliss on Life Ins., §§ 317, 318.) The defendant cannot succeed upon the answer that the policies ceased and determined by reason of the non-payment of premiums, as it was its own act which prevented this being done. (*Homer* v. *Guardian L. Ins. Co.*, 67 N. Y. 481; *Ripley* v. *Ætna Ins. Co.*, 30 id. 136–164; *Leslie* v. *Knick. L. Ins. Co.*, 63 id. 27; *Howel* v. *Knick. L. Ins. Co.*, 44 id. 284; *Meyer* v. *Knick. L. Ins. Co.*, 73 id. 527; *Cohen* v. *Mut. Ins. Co.*, 50 id. 610; *Sands* v. *N. Y. Ins. Co.*, id. 626; *Leslie* v. *Knick. L. Ins. Co.*, 2 Hun, 218; *Baker* v. *Union L. Ins. Co.*, 37 How. 129; *Manuf. & Traders' Bk.* v. *Hazard*, 30 N. Y. 226–230; *Babcock* v. *Eckler*, 27 id. 632.) Under the form of these particular policies the company could not declare them forfeited until payment of the premiums had been demanded of the beneficiaries, and not paid. (*Sands* v. *N. Y. L. Ins. Co.*, 50 N. Y. 631–632; *Howell* v. *Knick. L. Ins. Co.*, 44 id. 279; *Roehner* v. *Knick. L. Ins. Co.*, 63 id. 160; *Mut. Ben. L. Ins. Co.* v. *French*, 2 Cin., Ohio, Sup. Ct. 321; *Van Rensselaer* v. *Jewett*, 2 Comst. [N. Y.] 14.) By reason of the long-established custom of notifying each policy-holder of the amount of dividends declared in each year, it could not declare a forfeiture for non-payment of the premiums in suit until it had notified the plaintiffs of the dividends after the void surrender. (51 How. 269; 73 N. Y. 528; *Home L. Ins. Co.* v. *Pierce*, 5 Ins. L. J. 290.) As to the waiver of the condition of proof of death of the deceased, George Davis, the company waived all its rights under this condition by declaring that the policies had lapsed, and were no longer in existence when notice of the death of George Davis was given them. (*Goodwin* v. *Mass. Mut. L. Ins. Co.*, 73 N. Y. 480; *Shaw* v. *Republic L. Ins. Co.*, 69 id. 286; *Grattan* v. *Met. L. Ins. Co.*, 80 id. 289; *Hayden* v. *Am. Pop. L. Ins. Co.*, 69 id. 439; *Prentice* v. *Knick. L. Ins. Co.*, 77 id. 489; *Dahn* v. *Farmers' Joint-Stock Ins. Co.*, 5 Lans. 275; *Cornwell* v. *Haight*, 21 N. Y. 465; *Bennett* v. *Lycoming Co. Mut. Ins. Co.*, 67 id.

274; *Francis* v. *Ocean Ins. Co.*, 6 Cow. 415; *Post* v. *Ætna Ins. Co.*, 43 Barb. 365; *Van Allen* v. *Farmers' Joint-Stock Ins. Co.*, 10 Hun, 400.) Where it is the intention to have the policy issue under the act of 1840, it is not necessary that the policy should follow the language of the act, or that the children should be named as such. (*Brunner* v. *Cohen*, 86 N. Y. 14; 2 Jarman on Wills [16th Perkins' ed.], 23; 2 Story's Eq. Jur., § 1065*b*; *Vannorsdall* v. *Van Deventer*, 51 Barb. 137; *Heard* v. *Horton*, 1 Denio, 165; *Scott* v. *Guernsey*, 48 N. Y. 106; *Drake* v. *Lawrence*, 19 Hun, 112; *People* v. *Globe Mut. Ins. Co.*, 15 Abb. N. C. 75; *Applegate* v. *Fraternal Ins. Co.*, 7 Ohio, 292; *Pilcher* v. *N. Y. L. Ins. Co.*, 10 Ins. L. J. 312, April, 1881; *Valley Mut. L. Ins. Co.* v. *Burke*, 15 Repr. 572.) By treating the policy as still in force at the time of the surrender, the defendant waived any forfeiture which it might have insisted upon, and this may be inferred from the circumstances. (*Viele* v. *Ger. Ins. Co.*, 26 Iowa, 9; *Viall* v. *Gen. Mut. Ins. Co.*, 19 Barb. 440; *Goit* v. *Nat. Prot. Ins. Co.*, 25 id. 190; *Bodine* v. *Ex. F. Ins. Co.*, 51 N. Y. 117; *Boehen* v. *Williamsburgh Ins. Co.*, 38 id. 131; *Washoe* v. *Hibernia F. Ins. Co.*, 7 Hun, 75; *S. C.*, 66 N. Y. 613.)

FINCH, J.  All three of the life insurance policies sought to be revived and enforced in this action purport on their face to be contracts with the wife as the party assured, and not at all with the husband, who stands in the policies as simply the life insured, his conduct and death furnishing the contingencies upon which the liabilities of the insurer are made to depend. As the relation was tersely described on the argument, the contract is about the husband but not with him.  He, therefore, in procuring the policies to be made, in paying the premiums, in receiving and acting upon notices, and in doing whatever was necessary to perfect and continue the rights of the assured, must stand in the attitude of an agent, acting for and representing the assured (*Baker* v. *Union Mut. L. Ins. Co.*, 43 N. Y. 283); and as having no interest in the policies, unless, possibly, after the death of all of the assured.  And it

makes no difference that they have been kept in total ignorance of the existence of the policies for their benefit until after the death of the insured, for their claim to the fruits of the insurance must necessarily be a ratification of the acts by which it was obtained.   The wife, therefore, in this case had a vested interest in the policies at the moment of their delivery to the insured by force of the statute which permitted them to be made in their existing form. (Laws of 1840, chap. 80.)   Prior to that enactment and at common law it was open to question whether the wife and children had an insurable interest in the life of the husband and father (Bliss on Life Ins., § 10; *Ruse* v. *Mut. Ben. L. Ins. Co.*, 23 N.Y. 516), and whether he could protect them save by taking out policies in his own name, and for the benefit of his estate which in the end would go to them. But this made the insurance liable for his debts, and left it impossible for those who needed assistance most to obtain it at all.   (*Ruppert* v. *Union Mut. Ins. Co.*, 7 Rob. 155, 156.)   The statute was intended to and does remedy the difficulty.   It expressly authorizes the wife and children to insure the life of the husband and father, and hold the provision without liability for his debts, and the policies here purport to have made exactly that contract.   They created a vested interest in the wife, and one also in the children, by force of the clause providing for payment to them if the wife should die before the maturity of the policy.   It is true that one of the policies, that in the case marked A., uses the word "heirs" instead of children, and much of the appellant's argument is founded upon that fact.   But the conclusions which we have reached as to policy A. make that difference unessential, and permit us for the purposes of the discussion to treat the word "heirs" as meaning children, and all the policies as alike in that respect. So that the wife held the insurance for her own benefit if she survived her husband, and the children if she died before him. These persons were the assured, with whom through the husband as agent the contract was made, and they acquired and held their ownership irrespective of the question whether the policies had been actually delivered to them.

Such actual delivery, as a necessary condition of their interest and ownership, is argued here; and one case in this State is cited as authority for the doctrine. (*Bickerton* v. *Jaques*, 28 Hun, 119.) But the policy in that case was taken out by Jaques and made payable to his sister, and so was not issued under the act of 1840 and was unaffected by it; the court expressly in its opinion adverting to that fact. The interest and ownership of the wife and children in a statutory policy is further indicated by the law relating to its assignment. The cases which hold that the wife cannot traffic with her policy, by assignment or otherwise, go upon the basis that she is owner, but rest the prohibition upon the character of the property as a provision for orphanage and widowhood; and the statutes permitting an assignment by her, under careful and restrictive provisions, necessarily recognize her interest and ownership as supporting the transfers allowed. The case of *Olmsted* v. *Keyes* (85 N. Y. 593) recognizes this right of the wife to the fullest extent. The whole argument of that case proceeds upon the theory that the assured, when the policy is made payable to her, or, as in that case, to a trustee for her, becomes sole owner, and, but for the statute regulations, could dispose of it as she pleased. Upon her death the ownership of the policy was held to vest in the husband by the usual marital right over the wife's property, and his interest was founded upon hers. We have seen that in these cases the action of the husband is as agent, and hence a delivery of the policy to him is a delivery to the wife for whom he acts, and the manual possession of the papers by her cannot be essential to her right.

These policies, therefore, at the moment of their execution, vested in the wife and children as the assured under the provisions of the statute. Their interest was in the whole contract and not merely from year to year, and so far only as it was executed. (*N. Y. Life Ins. Co.* v. *Statham*, 93 U. S. 24.) They had the right, if the husband failed to pay the premiums, to pay them themselves and so continue the policy in force. It is a necessary result of this ownership that the husband could not

without the assent of the assured surrender the policy to the company. (*Stilwell* v. *Mut. Life Ins. Co.*, 72 N. Y. 388; Bliss on Life Ins., § 348; *Knickerbocker Life Ins. Co.* v. *Weitz*, 99 Mass. 157; *Chapin* v. *Fellowes*, 36 Conn. 132.) His act in so doing is not within the scope of the authority inferable from his taking out the policy, and is repudiated instead of ratified by the claim of the assured founded upon it. It follows that the action cannot be defended upon the ground of such surrender, or through any rights thus obtained. The plaintiffs are entitled to treat that obstacle as removed, and to have possession of their policies unless barred by some other reason.

Such other reason is alleged to be the forfeiture of the policies through non-payment of annual premiums as they fell due, and these omissions raise the remaining questions in the case. Policy A. in December, 1874, and five months before the attempted surrender, was forfeited by its terms on account of neglect to pay the annual premium then falling due. The usual notice of its amount and of the dividend which might be applied upon it was given to the insured, to whom alone it had been previously sent, and who was certainly the agent of the assured, for the purpose of receiving such notice and paying the premium about to mature. While at that time such notice was not commanded by statute, it was required by and might justly be expected from the settled custom and habit of the insurer. In exact accord with that habit and custom it was given, and if a demand of the premium was needed it amounted to such demand. There is, therefore, as to policy A., no answer to the forfeiture unless it be in the suggestion upon which the General Term relied that such forfeiture was waived by the agreement of surrender. That agreement, it was argued, treated the policy as valid and subsisting and so waived the existing default. We do not agree to that conclusion for several reasons. The plaintiffs stand here repudiating that surrender and insisting that it is fraudulent and void, and at the same time seeking a benefit under it as a revival of their forfeited policy. They would set it aside where it harms them

and maintain it where it helps them.   In so doing they utterly pervert the true nature of the transaction.   That was an effort, not to revive the policy, but to kill it more effectually than ever, and so understood on both sides.   It indicates no waiver by the company of existing rights, but an attempt to acquire an added right and a new and further defense against liability. The forfeiture had relieved them from liability, but the policy itself was outstanding and might expose them to the appearance of a claim and a consequent litigation, and they paid something to secure its possession as a voucher and its final cancellation.   The act was not in the least inconsistent with a position held and maintained, that the policy was valueless and unenforceable as an obligation, any more than that one who has a good title to real estate can be said to admit that he has none, because he bought in for his safety and security a possible hostile claim which he did not deem valid.   There is no proof in the case that the payment made to the father was in fact, or was called or deemed, a surrender value of the policy, so as to involve an admission of its vitality, beyond a marginal note in the receipts which is purely formal and might have been explained if excluded evidence had been admitted.   On the contrary our attention is called to the very smallness of the amount paid in comparison with the premiums received as indicating that a fair surrender value was not given, and that the company made a rapacious and unjust bargain ; and, as to what was said and understood at the time, the door was closed by the objection of the plaintiffs and a ruling in their favor excluding the offered proofs.   We see no justification for that ruling. The evidence was not admissible on the ground of agency, but when the plaintiffs rely upon the act of the company as a waiver it is vitally important to know just what that act in truth was, and how and why the form of receipt came to be used.   In the light of this ruling we are bound to assume that the defendant company might and would have proved that at the time of the surrender the insured was expressly told that the policy had lapsed and forfeited ; that the company stood upon its rights ; but that if the insured would give up possession of the policy,

they would give him a certain moderate sum as an act of kindness to an old agent of the corporation, and in recognition of an imperfect moral equity incapable of enforcement, but having about it a sort of rude justice. The company was a mutual one. For many years the insured had paid his premiums until poverty and misfortune occasioned a default. Everybody feels the force with which the situation appeals to generous and kind treatment. The companies have felt it and the legislature also. The former have adopted what they call non-forfeitable policies, and the latter has legislated in the same direction. Indeed the Federal court, with some formidable dissent, have recognized that equity, where a forfeiture had occurred by reason of war making payment impossible, as sufficiently strong and definite to be enforced in the courts. (*N. Y. Life Ins. Co.* v. *Statham, supra.*) The pressure of that inchoate equity, even where the assured or their agent had been in fault through the nonpayment of premiums, the defendant might well and justly recognize; and if it did, and paid a gratuity for that reason, the act stood expressly upon the lapse of the policy and cannot be tortured into an admission of its vitality.

It is obvious, also, that if in any sense the insurer can be said to have recognized the policy as a valid and subsisting obligation, it was a conditional and not an absolute recognition. It was conditioned upon the surrender, and made solely for that purpose. It is not in the least doubtful that, but for the agreement to surrender, no sort of admission would have been made of the existing validity of the policy. Nobody tells us what conversation occurred at the time, but the transaction itself leads to the inevitable inference that the waiver, if it can be deemed such, was conditional upon the surrender and cancellation of the policy; and the plaintiffs cannot avail themselves of the waiver which their agent secured, and repudiate the terms and conditions upon which alone he secured it. (*Baker* v. *Union Life Ins. Co., supra.*) For these reasons we are of opinion that there should have been no recovery upon policy A.

The situation as to the other two policies is different in the very important particular that neither of them were forfeited

when the surrender took place; and the failure to pay annual premiums occurred thereafter.     As to these omissions, two things happened which by possibility may have prevented such payments by the assured, and for which the insurer was accountable.   No notices were sent either to the insured or to the children, and the company by the wrongful possession and cancellation of the policies, and by their agreement of surrender, did an act, the tendency and purpose of which was to prevent future payment by the parties interested.   If the company had refused to buy in the policies of the insured, except with the consent of the assured, one of two things would certainly have taken place.   Either in view of their father's embarrassment, the children would have consented to the surrender, taking as their own the surrender value which belonged to them, or they would have kept the policies in life by themselves paying the premiums.   Such action by the company on the line of its clear duty would have left the insured without the least motive for concealment of the situation from the children, and in all human probability have given them a knowledge of their rights.   But the agreement of surrender practically bought the father's silence.   The result shows it.   He kept the secret during his life because he had in his pocket what belonged to his children and not to himself, and left the information in a letter found after his death, showing the duplicity of his dealing in the transaction.   His conduct operated as a fraud upon the assured, and in that fraud the insurer participated, with a full knowledge of the probable consequences.   The company cannot depend upon a default to which its own wrongful act contributed, and but for which a lapse might not have occurred. (*Meyer* v. *Knickerbocker Life Ins. Co.*, 73 N. Y. 516.)   The company kept the secret on its part, and now cannot set up as a defense the non-payment of premiums which it did not intend or expect to receive, and which it may justly be said to have occasioned by its own unauthorized act.

Nor should the recovery on these two policies be limited to the surrender value. That would add the sanction of the court to the unauthorized surrender, and make it valid, leaving only

an action for the surrender value.   More than that was the interest of the assured, and greater than that their loss by the unauthorized act.    They can only obtain full redress by a recovery of the amount insured, less the unpaid premiums and interest.

The judgment should be reversed and a new trial granted, costs to abide the event, unless the plaintiffs stipulate to deduct from the judgment the amount recovered upon policy A., in which event the judgment is affirmed, without costs to either party in this court.

All concur.

Judgment accordingly.