CHARLES O. HALL, Respondent, *v.* ADOLPH HESS and ELECTRICITY SAVINGS COMPANY, INC., Defendants; ADOLPH HESS, Appellant.

(Supreme Court, Appellate Term, First Department, November, 1916.)

Insurance (life) — disposal of interest in tontine policy — contempt — judgment debtors — injunction.

A judgment debtor who disposes of what interest he may have in a tontine policy upon his life made payable to his wife is not liable to a fine as for contempt for violation of an injunction order against any disposition by him of his prop-

Supreme Court, Appellate Term, November, 1916. [Vol. 97.

erty where it clearly appears that the guaranteed reserve value of the policy was at least $500 less than loans previously made thereon.

Where the money received by the judgment debtor as the proceeds of the loan which constituted the alleged contempt was received by him solely as the agent or other fiduciary representative of the insurance company and one who had made a loan on the policy, the judgment debtor's disposal of the money in the interest of his principal is not a violation of the injunction order.

Shearn, J., dissents.

APPEAL from an order of the City Court of the city of New York adjudging judgment debtor in contempt.

David Steckler, for appellant.

Howard C. Taylor (Abraham Lipton, of counsel), for respondent.

BIJUR, J. I concur in the view that a fine should have been imposed on the judgment debtor to the extent of $291.40 and costs in connection with the policy No. 1,879,057. In my opinion, however, no punishment was justified in regard to the debtor's dealings in connection with policy No. 789,413. The facts as to that policy are averred to be that prior to the making of the injunction order of August 9, 1915, that policy had been assigned to the insurance company to secure a loan of $1,548 due October 7, 1914. In August, 1914, the judgment debtor made a second assignment of the policy to his brother-in-law, Mr. Stern, to secure the payment of a loan of $1,000 to $2,000, made to him by Mr. Stern. In May, 1916, when the transaction alleged to be a contempt occurred, the surrender value of the policy, that is to say, its "guaranteed reserve" value, amounted to $2,064.53. In that month the company made a loan on the policy of $1,947.17, of which it retained $1,750.75

to cover its former loan and unpaid premiums, leaving $196.43 balance for which the judgment debtor avers that he " accounted to Mr. Stern." The policy would have lapsed on the expiration of the day on which this new loan was made had the overdue premiums not been paid. The note to the insurance company which evidences the new loan was made by the judgment debtor, his wife and Mr. Stern.

It is apparent from this recital of the financial status of the policy and the loans which it secured that its guaranteed reserve value was at least $500 less than the loans which had been made upon it and to secure which the policy had been assigned by the judgment debtor, first, to the insurance company, and then, as a secondary assignment, to Mr. Stern. Its actual value to the judgment debtor in dollars and cents — if I may be permitted the use of the term — is minus $500.

I do not see how any disposal by the judgment debtor of an article already pledged for much more than its value can be said to be " calculated " to impair any right or remedy of a creditor. Many cases cited by respondent, to the effect that where the precise loss to the creditor has not been or cannot be shown a fine of $250 may nevertheless be imposed, are not in point; because in the instant case it *affirmatively* appears that the act of the debtor could not have injured the creditor since the article disposed of was utterly without value to the debtor or the creditor.

The respondent cites also a number of cases apparently to sustain a proposition which he does not clearly advance, but which I understand to be that any dealing by the debtor with property in which he is interested may be treated as a disposition of his property harmful to his creditors. The respondent's error

consists in failing to note a salient feature in the cases which he cites. Thus the extract which he quotes from *Matter of Black,* 138 App. Div. 562, begins: " When the *legal* title to property is in a judgment debtor, he has no right to violate a positive order of the court," etc. To the same effect is *Walter* v. *Pecare,* 11 N. Y. Supp. 146, cited by respondent. In that case the debtor was punished not because he had transferred an intangible and undefined interest in insurance money which was owing to him, but because he transferred a check representing moneys to which he had legal title, and the court *did not believe* his story of an assignment of his title made prior to the issuance of the injunction. It is apparent that in the instant case the debtor had no legal title to the policy.

It is claimed further, however, that it was the disposition made by him of the moneys received as the proceeds of the loan which constituted the contempt. It seems to me to be quite evident that this money was not received by him in his individual capacity, but solely as the agent or other fiduciary representative of the insurance company and Mr. Stern respectively to whom he was bound to account for every cent of it. The mere fact that the moneys may have come into his physical possession because the insurance company in a spirit of caution may have insisted on making a check payable either to his order or to the order of the three parties, including himself, who had signed the note, has no juridical significance. If the money which he received was not his money, but the money of the insurance company and Mr. Stern, it came into his hands merely as agent or other fiduciary and his disposal of them in the interest of his principal or *cestui que trust* was not a violation of an injunction against the disposal by him of any of *his* property.

Order modified by reducing the fine to the sum of two hundred and ninety-one dollars and forty cents, with thirty dollars costs to be paid within thirty days after notice of entry of the order entered herein in the City Court; and as thus modified affirmed, with ten dollars costs and disbursements to the appellant; costs to be applied upon the fine.

Guy, J., concurs.

Shearn, J. (dissenting). The first question to be determined is whether the insurance policies, the disposition of a part of whose proceeds constituted the adjudged contempt, were exempt under section 52 of the Domestic Relations Law. The first policy, No. 789,413, was a tontine policy taken out by the judgment debtor and provided for payment to his wife, her executors, administrators or assigns. No claim is made or could be plausibly made that the policy was a contract between the insurance company and the wife. But appellant contends that under the decision in *Whitehead* v. *New York Life Ins. Co.,* 102 N. Y. 143, the mere fact that the wife is the beneficiary is sufficient to make the policy the property of the wife. The case of *Jacobs* v. *Strumwasser,* 84 Misc. Rep. 28, is cited, where it was said: " It is well established law that where a husband insures his life for the benefit of his wife by an ordinary life policy, the property of the policy vests at once in the beneficiary (*Whitehead* v. *New York Life Ins. Co.,* 102 N. Y. 143), and it cannot be reached by creditors of the husband." It is true that the reporter's headnote in the *Whitehead* case so states the decision. Turning to the opinion, however, in the *Whitehead* case, we find that Judge Finch said: "All three of the life insurance policies

sought to be revived and enforced in this action purport on their face to be contracts with the wife as the party assured, and not at all with the husband, who stands in the policies as simply the life insured, his conduct and death furnishing the contingencies upon which the liabilities of the insured are made to depend. As the relation was tersely described on the argument, the contract is about the husband but not with him. He, therefore, in procuring the policies to be made, in paying the premiums, in receiving and acting upon notices, and in doing whatever was necessary to perfect and continue the rights of the assured, must stand in the attitude of an agent, acting for and representing the assured; and as having no interest in the policies, unless, possibly, after the death of all of the assured. And it makes no difference that they have been kept in total ignorance of the existence of the policies for their benefit until after the death of the insured, for their claim to the fruits of the insurance must necessarily be a ratification of the acts by which it was obtained. The wife, therefore, in this case had a vested interest in the policies at the moment of their delivery to the insured by force of the statute which permitted them to be made in their existing form."

Obviously, therefore, this case is no authority for the broad proposition that where a husband insures his life for the benefit of his wife, the property in the policy vests at once in the beneficiary. The statute provides: "A married woman may, in her own name, or in the name of a third person, with his consent, as her trustee, cause the life of her husband to be insured for a definite period, or for the term of his natural life," and that in such case the policy belongs to her free from any claim of creditors, with the familiar exception of the premiums exceeding $500 and being paid

out of the husband's property.   The test of exemption is whether or not the contract of insurance was made by or for the wife as principal with the insurance company.   If it was her contract, even though made for her by her husband, it is exempt.   If it was his contract, it is not exempt even if he intended that she should receive the proceeds thereof.   That this is the true test is made clear by the case of *Bradshaw* v. *Mutual Life Ins. Co.*, 187 N. Y. 347.   That case is first reported in 109 Appellate Division, 375, wherein the fourth department sustained the proposition that the mere fact that the husband procured the policy and made it payable to his wife stamped it as her contract and exempted it under the statute.   An examination of the prevailing opinion of the Appellate Division at page 380 shows that the *Whitehead* case was referred to and relied upon.   The Court of Appeals reversed the lower court and adopted the language of the dissenting opinion as follows: " Most of the authorities mentioned in the prevailing opinion of the Appellate Division on the decision of the appeal in that court (109 App. Div. 375), and which are relied upon by the respondent in this appeal, are referred to, and satisfactorily explained and distinguished from this case in the dissenting opinion therein."   Referring to the dissenting opinion, we find it said (p. 382): " The decision in the case of *Whitehead* v. *New York Life Ins. Co.*, 102 N. Y. 143, and what was said in the opinion of the court had reference to a contract of insurance made with the wife and not by the husband as in the case at bar.   In that case it was held that it was competent for a wife to insure the life of her husband for her sole benefit or for the benefit of herself and children, and that just that was done in that case and, therefore, that the estate of the husband had no interest in the fund."   The *Bradshaw* case went back for a

new trial and resulted in a decision by the Court of Appeals reported in 205 New York, 467. On this appeal it appeared for the first time that the application was signed " Corrie J. Bradshaw, per R. C. Bradshaw " (p. 476). In the prevailing opinion, Judge Gray said: " The policy of insurance, upon which the plaintiffs seek to recover, was a contract with the wife of the testator and though procured by him for her benefit, he was acting as her agent and represented her. It was immaterial that he paid the premiums and retained possession of the policy; those facts did not affect the contract as one with her alone. He acquired neither interest in, nor power of disposition over, the policy. His relation to it was that of the life insured; while hers was that of the legal holder, in whom, solely, was vested the interest." The test of exemption, therefore, being whether the contract of insurance was made by or for the wife as principal, and no such fact here appearing, but, on the contrary, the contract being between the company and the judgment debtor as principal, this policy is not exempt under section 52 of the Domestic Relations Law.

The second policy, No. 1,879,057, is also one between the insurance company and the judgment debtor, with the wife named as beneficiary, and contains a provision allowing a change of beneficiary without the wife's consent.

It is alleged that the wife paid the premiums and retained possession of this policy, but that is " immaterial " as Judge Gray said in the *Bradshaw* case. There are averments from which it might be inferred that, although this policy is on its face between the insurance company and the judgment debtor, it is really between the insurance company and the judgment debtor's wife, the claim being that the judgment

debtor acted as his wife's agent in taking out the policy. Any such inference is completely overborne, however, by the provision in the policy allowing the judgment debtor to change the beneficiary without his wife's consent. *Lowenstein* v. *Koch,* 165 App. Div. 760; affd., 217 N. Y. 689. We are not concerned with any lien the wife may have had for premiums paid by her, the point being whether the judgment debtor owned the policy. Manifestly, neither policy was exempt under section 52 of the Domestic Relations Law.

Coming now to the question of the contempt it appears that while the injunction order was in force the judgment debtor procured a loan on policy No. 789,413 from the insurance company amounting to $1,947.18 for which a promissory note was jointly executed by the judgment debtor, his wife and one Morris Stern, a brother-in-law of the assured, and the policy was assigned to the company as collateral; further, that the judgment debtor procured a loan from the company of $770.42 on the other policy, for which a promissory note was executed by the judgment debtor and his wife, which he transferred to the company as collateral. The policy No. 789,413 had been previously assigned to the judgment debtor's brother-in-law Stern for a loan of either $2,000 or $1,000, according to the view one takes of the conflicting evidence. This policy had no provision for the payment of a " cash value " until its expiration but it had a provision for the payment of what it called the " guaranteed reserve " upon surrender. At the time in question, the guaranteed reserve, reckoned as of October 7, 1916, amounted to $2,064.63. The proceeds of the loan of $1,947.18 were disposed of as follows, according to the judgment debtor: " $1,548 was retained by the company to cover a former loan of

that amount; $101.95 for the premium due April 7, 1916, and interest; $100.80 interest on the former loan, and $196.43 by a check of the insurance company, the proceeds of which were accounted for to Mr. Stern.'' It is claimed on behalf of the judgment debtor that the arrangement was merely for the purpose of keeping the policy alive, that he received no benefit from it and that having no equity in the policy the creditor's rights were not impaired. If he had no equity in the policy, it was no benefit to the creditor to have the policy kept alive and it was distinctly to the benefit of the judgment debtor, both on account of his desire to provide for his wife and to take care of his debt to his brother-in-law. While under injunction he had no right to make any disposition of property under his control, either to the insurance company to pay premiums or to his brother-in-law to apply on an existing indebtedness, without leave of the court. But if this policy had been surrendered at the time of the acts complained of, the judgment debtor would not have been entitled to receive any sum whatever, as the loan by the insurance company and the indebtedness to Stern, the assignee, would have absorbed everything. Therefore, as to this transaction, no damage to the judgment creditor was established. Proof of such damage is essential where the fine exceeds $250. *Moffat* v. *Herman*, 116 N. Y. 131. Nevertheless the act of the judgment debtor constituted a technical contempt. Any disposition by a judgment debtor, under injunction, of property under his control is, on its face, an act " calculated " to impair the rights and remedies of the creditor. It is no answer to an actual violation of a judge's order that a subsequent analysis of all the facts involved shows either that there was no damage or that there could have been no damage. One of the rights and

remedies of the judgment creditor, after injunction, is to have every disposal by the judgment debtor of property under his control first submitted to the court for approval and authorization. The mere disposition of the property in violation of the judge's order constitutes technically a contempt. Any other rule would make the judgment debtor the arbiter in the first instance of whether he should or should not dispose of property under his control and would tend greatly to weaken the administration of justice. It is no answer, in my judgment, to urge in this case that the judgment debtor received the proceeds of the loan from the insurance company as the agent of the company and the agent of his brother-in-law. True the company would not have agreed to loan him the money except upon his agreement to use part of the loan to pay the premium and, perhaps, the brother-in-law would not have joined in the transaction unless the judgment debtor had promised to turn over to him the balance of the loan over and above the premium, but his agreement to apply the loan to the discharge of a previous loan and to pay a new premium, the excess to go to his brother-in-law, did not make him the agent of the insurance company. The company dealt with him as a principal and he used part of the funds loaned to him to pay a new premium because he personally wished to keep the policy alive for the benefit of his wife and his brother-in-law. The judgment creditor's right to require the judgment debtor to apply to the court for authorization to deal with and dispose of property under his control is a substantial one and should be strictly upheld. For the contempt involved in this transaction a fine of $250 should have been imposed.

A different situation exists with reference to the

second policy. At the time of the transaction, November 30, 1915, it had a surrender value of $770.42. At that time the judgment debtor owed the insurance company for a previous loan on the policy $475 and $4.02 interest. There was, therefore, an equity of $291.40 which would have at that time been available to the judgment creditor. By increasing the loan to $770.42 and using the surplus to apply on a premium of $369.15, the judgment debtor wrongfully diverted from the judgment creditor $291.40, the difference between the loan and the debt. The judgment creditor was damaged to this amount. It cannot be successfully urged that keeping the policy alive was beneficial to the creditor, as will appear by comparing the sum that would be available to the creditor if the policy were surrendered on November 30, 1916, with the sum available November 30, 1915, which was $291.40. The surrender value on November 30, 1916, would be $1,015.50. Deducting the increased loan of $770.42 and interest amounting to $37.52, the net amount available to the creditor on November 30, 1916, would be $207.56, as against $291.40, the amount available the previous year. The proof, therefore, justified a fine of $291.40 upon the second transaction. The fine imposed, being the full amount of the judgment of $1,248.60 and costs, was excessive. The order should be modified by reducing the fine to the sum of $541.40, with $30 costs, to be paid in two equal installments, the first within ten days after service of the order as modified and the second within thirty days thereafter, and, as so modified, the order appealed from should be affirmed, with costs.

Order modified, and, as modified, affirmed.