In the Matter of the Accounting of THEODORE G. KENEFICK, as Temporary Administrator and Executor of HENRY P. BURGARD, II, Deceased.

Surrogate's Court, Erie County, February 19, 1954.

*Leroy Hurlbert, John Gridley* and *Theodore G. Kenefick,* in person, for Theodore G. Kenefick, as temporary administrator and executor, petitioner.

*Adelbert Fleischmann* for Annette Sullivan, claimant.

*George Trimper,* special guardian for Sarah Burgard, an infant.

YEAGER, S. From the statement of facts, stipulated by the attorneys and special guardian enumerated above, and from the exhibits referred to in the stipulation, the following facts appear:

On February 15, 1922, Henry P. Burgard, II, and Augusta Crawford Burgard were married. Two children, Annette and Augusta, were born of that marriage.

On December 17, 1937, Henry P. Burgard, II, and Augusta Crawford Burgard entered into a written separation agreement. Reference will be made later in this decision to pertinent terms of the said separation agreement.

On June 30, 1939, the same parties entered into another separation agreement. Between the dates of the two separation agreements the parties had resumed living together as man and wife.

On or about March 12, 1940, Henry P. Burgard, II, and Augusta Burgard were divorced in the State of Florida. Subsequently, Mr. Burgard was married to Pauline Mooney Burgard, and there was a child of this marriage — Sarah A. Burgard.

On August 28, 1951, Mr. Burgard died.

In the first separation agreement the following paragraph appeared: " 6. Within thirty days after the execution of this agreement, the Husband shall effect life insurance covering his life in the principal amount of not less than Ten Thousand Dollars ($10,000.00) for the benefit of each child, and shall within ninety days after the execution of this agreement effect additional life insurance covering his life in an additional amount not less than Ten Thousand Dollars ($10,000.00) for the benefit of each child and shall at all times keep such insurance in full force and effect so long as each child shall live and shall pay all dues, premiums and assessments thereon and each year transmit to the Wife receipts showing that such dues, premiums and assessments have been paid. The Husband shall not borrow against the insurance nor shall he in any manner pledge or encumber the same."

In the second separation agreement the following paragraph appeared: " 5. Within thirty (30) days after the execution of this agreement, the husband shall effect life insurance covering his life in the principal amount of not less than Ten Thousand Dollars ($10,000.00) for the benefit of the children and shall within ninety (90) days after the execution of this agreement effect additional life insurance covering his life in an additional amount of not less than Ten Thousand Dollars ($10,000.00) for the benefit of the children, and shall at all times keep such insurance in full force and effect, so long as each child shall live, and shall pay all dues, premiums and assessments thereon, and each year transmit to the wife receipts showing that such dues, premiums and assessments have been paid. The husband shall not borrow against the insurance, nor shall he in any manner pledge or encumber the same."

On or about June 15, 1928, Mr. Burgard had purchased a life insurance policy in the Northwestern Mutual Life Insurance Company, No. 2,087,480, in the face amount of $10,000, payable to Augusta Crawford Burgard, subject to the insured's right to change the beneficiary. On or about January 27, 1938, Mr. Burgard caused the policy to be amended so as to be payable on his death to Annette and Augusta " share and share alike ", each to receive payment in one sum.

On April 18, 1949, about two and a half years before his death, Mr. Burgard caused this policy to be changed so as to be payable to Augusta and Sarah " share and share alike ".

Mr. Burgard also had purchased a U. S. Government life insurance policy, No. K166,864, in the face amount of $10,000, and on or about February 23, 1938, he caused a change of beneficiary to be made in this policy so that it became payable to Annette and Augusta " share and share alike ".

In September, 1951, a Supreme Court action was commenced by Annette Sullivan, being the same person as Annette Burgard, against her sister, Augusta, her stepsister, Sarah, and the executors of Mr. Burgard's will. The executors retained Moot, Sprague, Marcy & Gulick as their attorneys and a notice of retainer, dated October 19, 1951, was executed. On the same date, October 19, 1951, a stipulation was entered into by Annette's attorneys, Cohen, Fleischmann, Augspurger, Henderson & Campbell, and the attorneys for the executors, to the effect that the action against the executors would be then discontinued and that an order to that effect might be entered by either the plaintiff or the executors, without notice and without costs. On October 25, 1951, a Supreme Court order was granted by Honorable

Alger Williams, Justice of the Supreme Court, approving the aforesaid stipulation discontinuing the said action against the executors of Mr. Burgard's will, and amending the title of the action so that the only remaining defendants were Augusta Benning Burgard and Sarah A. Burgard. A complaint against said two defendants only, verified March 11, 1952, was drawn, followed by a supplemental summons dated April 18, 1952, and a "Supplemental Complaint" verified April 22, 1952. The supplemental pleadings brought into the action a new defendant: the Northwestern Mutual Life Insurance Company.

On October 18, 1952, the attorneys for the plaintiff executed a written consent to the effect that the Northwestern Mutual Life Insurance Company might pay $10,000, the proceeds of policy No. 2,087,480, in the following manner: $1,500 to the plaintiff, Annette Sullivan; $5,000 to the defendant, Augusta Benning Burgard; $3,500 to the general guardian of Sarah A. Burgard, less the amount allowed to William I. Morey, attorney, who had been appointed guardian ad litem for the defendant, Sarah, in the Supreme Court action.

Mr. Morey requested $1,150 for his services, plus $9.87 disbursements.

Then it appeared that some premium in connection with that policy had not been paid, so it became necessary to substitute for the "round number" figures, other figures, as follows: to the plaintiff, Annette Sullivan $1,483.24; to William I. Morey for his services and disbursements as guardian ad litem $1,159.87; to Pauline W. Burgard, as general guardian of the infant, Sarah A. Burgard $2,301.04.

These figures were stipulated by the plaintiff's attorneys, by stipulation dated November 12, 1952, which amended the "round number" figures contained in the previous stipulation, and in the order of the Supreme Court, granted on October 31, 1952, by the Honorable Regis J. O'Brien, Justice of the Supreme Court. Said order approved of the settlement of the action, directed distribution of the five thousand dollar proceeds of the Northwestern policy and fixed Mr. Morey's allowance for services and disbursements.

An order of the Supreme Court was granted on November 12, 1952, by Honorable Regis J. O'Brien, amending the order of October 31, 1952, for the reason above-mentioned. It appeared that the sum of $4,944.15 had been paid into the Erie County Treasurer's Office to the credit of this particular action, and a second order, also by Justice O'Brien, was granted on November 12, 1952, authorizing the County Treasurer to pay to the plaintiff.

Annette Sullivan — $1,483.24, less the County Treasurer's fees; to the general guardian of Sarah A. Burgard — $2,301.04, less the County Treasurer's fees, under joint control with J. Vincent Gaughan, Guardian Clerk of the Surrogate's Court of Erie County.

The aforesaid payments exhausted the net proceeds of the Northwestern policy to which Annette laid claim. Thus, at this stage of the litigation, the executors of Mr. Burgard's estate had been stipulated out of the action by the plaintiff; the Northwestern Mutual Life Insurance Company had been stipulated out of the action upon making the payment of $4,944.15 to the Erie County Treasurer; and at some point, which is not quite clear, Augusta Benning Burgard was dropped as a defendant; thus the only parties remaining were the original plaintiff, Annette Sullivan, and Sarah A. Burgard, defendant. They, through their attorneys, having divided the proceeds of the Northwestern policy in the manner I have described, discontinued the Supreme Court action. It appears from paragraph " Seventh " of the agreed stipulation of facts " that the Executors of Henry P. Burgard II did not participate in such settlement, nor was the same made with their consent ".

Thereafter Annette Sullivan executed a claim, verified on November 28, 1952, against the estate of Henry P. Burgard II, directing it to Theodore G. Kenefick as executor. The original claim is exhibit one in the Surrogate's Court proceeding and, in substance, the claimant demands payment of $3,500 to her and she confirms her agreement to compromise the Supreme Court action. Her claim was rejected by Theodore G. Kenefick as executor under date of February 5, 1953.

The first question which presents itself is this: does Annette Crawford Sullivan, who was not a party to either separation agreement but who was one of the children referred to in the separation agreements and who also was a beneficiary in the insurance policies, have a legal standing to sue either on the separation agreement, the insurance policy, or both? There seems to be no disagreement of counsel on this question. It appears from the briefs which have been submitted that both counsel for claimant and counsel for the estate agree that she has a legal right to bring an action in Supreme Court or this type of proceeding in Surrogate's Court, arising out of the facts of the case.

The next question which presents itself involves the legal doctrine commonly known as " Election of Remedies ". Did the claimant, by instituting the Supreme Court action and com-

promising her claim there, estop herself from bringing this proceeding in Surrogate's Court? Again it would appear from the briefs that counsel do not disagree as to what the New York State rule is regarding election of remedies, but disagree as to whether or not it has any application here. I find it has not.

From time to time courts have supplied definitions of the doctrine of " Election of Remedies ". Rather than quote from miscellaneous decisions over the years, I will make reference to a most recent case in the Court of Appeals, *Smith* v. *Kirkpatrick* (305 N. Y. 66, 73, 74), which itself makes reference to some of the older cases and definitions: " In *American Woolen Co.* v. *Samuelsohn* (226 N. Y. 61, 66), the doctrine of election of remedies was expressed in these words: ' An election of remedies takes place when a choice is exercised between remedies which proceed upon irreconcilable claims of right. When an election is made between such claims, with full knowledge of all the facts, an action may not thereafter be maintained upon the inconsistent claim.' * * * We have said that the doctrine of election of remedies is a harsh one and should not be extended (*Metropolitan Life Ins. Co.* v. *Childs Co.*, 230 N. Y. 285, 291). It has been criticized and the Legislature has indicated its disfavor for at least certain aspects of the doctrine by the enactment of sections 112-a–112-d of the Civil Practice Act."

In reaching the conclusion that the plaintiff did not make an election of remedies by suing in Supreme Court, it was difficult to avoid speculating on a number of questions, particularly as to the reasons why Annette accepted only $1,483.24, which left the major amount of the insurance proceeds for Sarah. However, I am not forgetting that, as found in the stipulation of facts: " (17) That the Executors of Henry P. Burgard II did not participate in such settlement, nor was the same made with their consent."

If Annette had pressed her Supreme Court action to judgment, and lost her case against Sarah, I believe that such judgment would have been *res judicata,* for the matter at issue and the parties would have been the same. If she had recovered the full amount, she certainly could not have filed a claim in Surrogate's Court for another $5,000 out of estate assets.

Referring again to *Smith* v. *Kirkpatrick* (*supra,* p. 70), but now on the subject of *res judicata,* Judge CONWAY wrote: " It is familiar law that where a cause of action has been prosecuted to a final adjudication on the merits, the *same cause of action* may not be again litigated." But the rights of Annette and Sarah were compromised, and the terms of the compromise were

approved by the Supreme Court, a necessary step because of the infancy of Sarah. Annette did not prosecute her cause of action "to a final adjudication on the merits".

The Supreme Court action was based on contract, and this claim is based on contract, and both the Supreme Court action and this proceeding in Surrogate's Court affirm the contract. The separation agreements are the underlying basis for the remedies, and although they provided for insurance policies as the medium or source of funds for the children, the fact that the insurance moneys have now all been disbursed does not bar Annette from recovering the balance due her from the general assets of the estate. In other words, since the basis of her claim against the estate for Mr. Burgard's breach of contract is sound, the source or type of the means of paying her claim is immaterial.

The executor argues that the claimant has no rights under the 1937 separation agreement because the parties resumed cohabitation; and that she has no rights under the 1939 separation agreement because she has received $5,000 of the $20,000 insurance therein referred to " for the benefit of the children ". He argues further that there is no basis for Annette to claim equality with Augusta, that is half of $20,000 as shown. While the claimant agrees that subsequent cohabitation of the parties to a separation agreement nullifies the agreement as to a creditor-beneficiary, such a forfeiture does not occur with respect to a donee-beneficiary. I concur with the authorities cited by the claimant's attorney in support of his argument. (*Morales* v. *Joanou,* 146 Misc. 515; *Whitehead* v. *New York Life Ins. Co.,* 102 N. Y. 143.)

The claimant further contends that, disregarding momentarily the 1937 separation agreement, she should succeed under the 1939 separation agreement, because both by its language and by the conduct of the parties, clear intention that Annette and Augusta were to share equally was manifested. The relevant part of the 1939 separation agreement is paragraph " 5." already quoted in this decision.

I am greatly impressed by the fact that Mr. Burgard, the father of Annette and Augusta, undertook to obtain $20,000 of life insurance for the benefit of his children and to keep it " in full force and effect, so long as each child shall live " and his promise that he would not " in any manner pledge or encumber the same ". I am also impressed by the fact that it was obviously Annette and Augusta, not Augusta and Sarah, who were the children which Mr. and Mrs. Burgard had in mind when

they executed the 1939 separation agreement, as well as the 1937 separation agreement. It is also impressive that not until almost ten years later, or April 18, 1949, did Mr. Burgard substitute Sarah's name for Annette's. There can be no question but that, when both separation agreements were made, the parents were considering and planning for the future of Annette and Augusta, the only children they had. In the absence of provable evidence that parents do not intend to treat their children equally, I do not feel it is in the province of this court to reach for remotely possible contingencies to support the argument advanced by the executor in behalf of unequal treatment.

The claim of Annette Crawford Sullivan is hereby allowed. The doctrine of election of remedies, which the courts have described as " harsh " is not applicable. Technically, the claimant is entitled to the difference between $5,000 and $1,483.24, but having filed her claim for $3,500, I will adopt that amount. Accordingly, $3,500, with interest thereon from the date of Mr. Burgard's death, is allowed and a decree may enter accordingly.