## ANNA C. BARNEY v. GUILFORD DUDLEY *et al.*

LIFE-INSURANCE POLICY — *Conversion — Measure of Damages — Rule*. In an action to recover damages for the conversion of a life-insurance policy, where the insured is still in good health and his life insurable, the measure of damages for the conversion would be the present value of the amount of the benefit named in the policy, less the present value of the cost in premiums it would require to procure another policy of like kind and value on the same life, taking into consideration, in making these estimates of value, the life expectancy tables; but where the insured is not in good health, and his life not insurable, it would be necessary, first, to ascertain from the life expectancy tables, from proof of his general condition of health, and from the testimony of experts, the number of years he is likely to live, and then compute the present value of the amount of the benefit named in the policy, and the present value of all the premiums to be paid thereon during such life; and where the present value of the benefit is greater than the present value of the premiums to be paid, the difference between such values would be the measure of damages.

### *Motion for Rehearing.*

THE material facts are stated in *Barney v. Dudley*, 40 Kas. 247, *et seq.*, and in the opinion herein, filed on July 5, 1889.

*G. C. Clemens,* for the motion.

*W. P. Douthitt,* and *Overmyer & Safford,* contra.

Opinion by CLOGSTON, C.: The motion for a rehearing is denied; but, inasmuch as this case goes back for a new trial, it is thought better to establish the rule or measure of damages the plaintiff is entitled to if she should recover. The plaintiff had, before the conversion of this policy, paid in as premiums $803.60. This included fourteen semi-annual premiums of $57.40 each. Now, to establish this sum as the plaintiff's measure of recovery, with interest, would be to allow the insured free insurance during the seven years in which premiums have been paid. This rule would not be a correct one, for the insured would have paid no consideration for the insurance during that period of time. The general rule is, as between the insured and the insurance company, when the company's business is wound up, or a policy is canceled, where an action is brought for damages, that the measure of damages is the difference between the rate of premium paid for the old insurance and what another company of equal credit and standing would charge to issue a new policy on the same life, and the difference in the rates of premium calculated upon his expectancy of life. This is upon the ground that the insured is placed in as good a condition as he was before his policy was canceled. This seems just and equitable. (*People v. Life Ins. Co.,* 78 N. Y. 114; *Bell's Case,* L. R. [9 Eq.] 717; *Life Ins. Co. v. Binford,* 78 Va. 103; *Phœnix Ins. Co. v. Baker,* 85 Ill. 410.) But it is claimed that this rule is not an equitable one as applied to the facts of this case. It is shown here that Barney, by reason of ill health, is now non-insurable. This, then, presents a different question, a question that has been discussed in many courts, and always a conclusion reached with doubts as to its correctness. The rule above stated we think not equitable as applied to this case, for this reason: the insured, at the time of taking the insurance, does it upon the thought and reason that disease and sickness are likely to

happen to him.    Insurance would be effected upon few lives, we think, if the insured was certain that no such mishap would overtake him, and that only by old age would death come; and insurance companies insure each individual with this in view.    The premiums are figured upon a contingency of accident, sickness, and premature death, and now to apply this rule to this case would leave the plaintiff robbed of a part of the contract against accident and premature decay. (*Holdich's Case*, L. R. [14 Eq.] 79.)

Again, to establish a rule that would make the tables of mortality the only evidence of the number of premiums the plaintiff would be compelled to pay, and deduct these premiums from the face of the policy, would practically deprive the plaintiff of the very thing that insurance was taken to guard against, and plaintiff would recover no benefit by reason of the ill-health of the insured which prevents reinsurance. This general rule is held to apply to both classes in the case of *People v. Life Ins. Co.*, 78 N. Y. 114; but that was a case where the insurance company was going out of business, and was closing up its affairs, and the court established that general rule in that case because of the impossibility and impracticability of ascertaining the state of health of each person holding a policy therein.    The defendants in this case stand upon a different footing from the insurance company in that case.    Here the insurance company is still carrying the policy, and the defendants will receive the benefit from it.    They have elected to appropriate and withhold this policy from the plaintiff, seeking to pay the premiums, and finally to recover at the death of Barney.    When they place themselves voluntarily in this position, they cannot complain if the strongest rule is held against them.

It is said in *People v. Life Ins. Co.*, supra: "But the health of the policyholder may since his insurance have become so impaired that his life is not now reinsurable, and hence in his particular case the value to be arrived at upon this basis [speaking of the general rule] would not be the measure of his damage."    So we think as applied to these defendants the

rule ought to be such as will give the plaintiff the full value of the policy at the time of its conversion, with interest. How to arrive at this value, as we said before, is a difficult question — one surrounded with uncertainties, depending upon the opinions of persons or insurance companies; but as before said, the defendants voluntarily assumed the risk, and they cannot complain. We therefore think the general rule above stated applicable to this case, with the modification, that if Barney is not insurable by reason of ill-health or accident, that fact may be shown to reduce his expectancy. It may also be shown by experienced and expert insurance men that by reason of the ill-health of the insured a greater rate of premium would be required to reinsure him on account of the shortened expectancy of his life. All these things may be given for the purpose of aiding the jury in determining his expectancy, and in this way determining the actual value of the policy at the time of its conversion; for if the insured's expectancy has been reduced, in proportion to such reduction the value of his policy has increased. It was said in *Bell's Case*, L. R. (9 Eq.) 717:

"As to the lives, it will be assumed, until the contrary is shown, that they are all in a normal state; that no other change has taken place than that which arises from the advance of age. If in addition to that, either from accident or illness, a higher rate of assurance is required, that must be added to the proof. That is one of the things which the office has assured against, and the chance of life has diminished."

See also *Speer v. Life Ins. Co.*, 36 Hun, 322.

We think the rule is fair and equitable as between the plaintiff and defendants, and therefore recommend that it be adopted.

By the Court: It is so ordered.

All the Justices concurring.