## MARY F. FISHER *vs.* METROPOLITAN LIFE INSURANCE COMPANY.

Worcester.    October 2, 1894. — October 18, 1894.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Life Insurance — Husband and Wife — Fraud — Action — Presumption.*

If a married woman who signs her husband's name, without his knowledge or consent, to an application for a policy of insurance which is issued upon his life for her benefit, and which, by the rules of the insurance company to which it is subject, is rendered void by her act, was innocent of any fraudulent intent, and was deceived by the agent of the insurance company and induced by his fraudulent representations to make the application, she can rescind the contract of insurance when she discovers the fraud, and recover back the amount of premiums paid by her on the policy.

There is no presumption of law that a married woman, who signed her husband's name, without his knowledge or consent, to an application for a policy of insurance, which was issued upon his life for her benefit, and which by the rules of the insurance company to which it was subject was rendered void by her act, knew the rules, which were not contained in the application signed by her, but were printed in a small receipt-book which came into her possession after the policy was issued.

CONTRACT, for money had and received. After the former decision, reported 160 Mass. 386, the case was tried in the Superior Court, before *Hopkins,* J., who allowed a bill of exceptions, in substance as follows.

The plaintiff offered evidence tending to show that one William Bannigan was the duly authorized agent of the defendant to solicit insurance; that Bannigan had often solicited James G. Fisher, the husband of the plaintiff, to insure his life in the defendant company for the benefit of the plaintiff, which he refused to do; that thereafter Bannigan came to the plaintiff and asked her why she did not insure her husband's life for her own benefit without letting her husband know anything about it; that to this she replied, " I can't do it, can I ? " and Bannigan said, " Yes, just as well as not," and " we could get it out and not let him know anything about it as long as he did n't care to be insured," and she replied that she would talk it over with her daughter and let him know; that later Bannigan saw her again and asked if she had talked it over with her daughter, and she informed him that she had, and that she had concluded to take out a policy, if it could be done as Bannigan had said; that Bannigan said he would bring in an application and have the plaintiff sign it; that he afterwards brought the application and told the plaintiff where to sign it; that he also told the plaintiff that he would bring in a physician some time when he was passing by and pass him off as a friend, and the plaintiff's husband need not know anything about the examination, but Bannigan would pass it off as a call; that a short time after Bannigan called with a physician, whom he presented to the family as a friend, and a general conversation was had, but there was nothing said about the plaintiff's husband being examined at that time; and that Bannigan afterwards brought a policy of insurance upon the life of the plaintiff's husband in the sum of $500, payable to her in case of his death, and a book upon which was

to be kept the payments made, and which contained extracts from the rules and regulations of the defendant, hereinafter referred to, and gave them to the plaintiff, and she placed them in a drawer.

The plaintiff testified that, at the time she signed the application and took out the policy, she did not know of the rules and regulations of the defendant; that the plaintiff paid from her own money to duly authorized agents of the defendant, but without the knowledge or consent of her husband, the premiums stipulated in the policy until July, 1892 ; that on July 21, 1892, when she had made all the payments on the policy that she did make, she was told by a former agent of the defendant that the policy was worthless because her husband did not know of the insurance ; and that she then wrote the following letter to the defendant's president: " My husband James G. Fisher is insured under policy 5667412, and I have just found out that it is against the rules, and I could not collect anything as he does not know it. Your agent told me it was all right, now they tell me I could not collect it but can get my money back. It has been two years and four months. I write saying that I will like my money back ; the agent knew all the time my husband was ignorant of it, but told me I would get the insurance just the same. Mr. Bannigan insured him, he was Ast. Superintendent at the time, please write immediately and let me know." No written reply was received to this letter, but soon afterwards one Travis, a duly authorized agent of the defendant, called upon the plaintiff and said to her that, with her husband's assent, the policy could be fixed up and made payable, which she refused to consent to ; and the defendant refused to refund the money paid by her.

The plaintiff's husband testified that Travis called upon him and urged him to sign a printed paper, which he carried with him, assenting to the insurance, which he refused to do; that this was the first he knew about the insurance ; and that at no time, before or after the issuing of the policy, did he sign the examination form on the back of the application, or authorize any one else so to do.

The material portions of the rules and regulations of the defendant, which were put in evidence by the plaintiff, and to

which the policy was subject, were as follows: "Under no circumstances can an application be written upon the life of a husband for the benefit of his wife, or upon a wife for her husband, or (a legal insurable interest existing) upon the life of any person for another's benefit (children excepted) unless the life upon which the policy is applied for fully understands and consents to the insurance, is examined by a physician of the company if the amount is over $200, or by an agent if under that sum, and unless the proposed insured personally signs the examination form on the back of the application, after the answers in said application are all recorded, and not otherwise. Any policy obtained in violation of these rules will be null and void."

The husband and the daughter of the plaintiff both testified that the name of the husband on the back of the application looked like the writing of the plaintiff. The plaintiff herself testified that she signed her own name to the front of the application, but had no recollection of signing her husband's name on the back, but that she would not swear that she did not. There was no other evidence showing when or by whom the signature of the husband was written on the back of the application.

The defendant asked the judge to rule as follows: "1. The plaintiff cannot maintain the action upon the testimony introduced. 2. The representations were not of such materiality as to entitle her to avoid the policy of insurance, or to maintain this action for the recovery of the money paid thereon." The judge declined so to rule; and the defendant excepted.

The defendant also asked the judge to rule, that, if the plaintiff forged her husband's name with the intent to deceive the defendant, and the defendant issued the policy in good faith, she could not thereby avoid the policy or maintain this action.

The judge gave this instruction, adding, "But if she signed his name by direction of the agent, and was innocent of any fraudulent intent in so doing, but was deceived by him and induced to sign it by his fraudulent representations, she might maintain the action."

The defendant asked for the following instructions to the jury: "If the evidence shows that the plaintiff agreed to be bound by the rules of the defendant by an agreement in writing

signed by her, and that she had in her possession those rules in the book upon which payments were made weekly by her for a period of two years and four months, the law will presume that she knew what the rules were, and, if she failed to read the rules of the company thus agreed to and being in her possession, she cannot plead ignorance of the rules, and if she knew or had presumably knowledge by the rules of the company that she could not hold a valid policy of insurance without the knowledge of her husband, and with that knowledge took out this insurance and continued to make the payments with such knowledge, she could not avoid the policy or maintain this action, even if Bannigan made the representations testified to by her, and even though the policy was void."

The judge read this instruction to the jury, and said : " So far as I understand that request, some portions I give you and others I do not.    I cannot say to you that the law makes it a presumption that she knew what the rules were.    It is a question for you to say whether, when she signed the application, she knew anything about the rules of the company."

The defendant further requested the judge to rule as follows :

" If the plaintiff knowingly participated in the fraudulent acts of Bannigan for the purpose of defrauding the company, and the company, without knowledge of the fraud, issued the policy in good faith, the plaintiff cannot recover.

" If the plaintiff, with intent to deceive the company, or to carry out the fraudulent act of obtaining insurance which could not lawfully be obtained, acted in collusion with Bannigan, and the policy was thereby obtained and issued by the company in good faith, the plaintiff cannot recover."

The judge gave both these instructions with this addition : " But if she was innocent of any fraudulent intent, and was deceived by Bannigan, and induced by his fraudulent representations to make the application, then she could rescind the contract of insurance when she discovered the fraud, and recover the amount of the premiums she had paid."

The defendant also requested the following ruling : " If the plaintiff wrote her husband's name with intent to deceive the company, and without the husband's knowledge or consent, she cannot recover."    The judge gave this ruling, and added :

" But if she signed his name by direction of the agent, and was innocent of any fraudulent intent in so doing, but was deceived by him and induced to sign it by his fraudulent representations, then so far she could recover."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. A. Gile*, for the defendant.

*J. R. Thayer*, for the plaintiff.

KNOWLTON, J.   The evidence at the former trial was substantially the same as that now before us, and the questions of law already decided in the case leave little open to the defendant on this bill of exceptions.

The exception to the refusal of the court to give the first two rulings requested by the defendant is covered by the former decision, in which it was said that, if the plaintiff " was innocent of any fraudulent intent, and was deceived by Bannigan and induced by his fraudulent representations to make the application, then she could rescind the contract of insurance when she discovered the fraud, and recover back the amount of the premiums which she had paid." 160 Mass. 386, 391.   It is now argued that, under St. 1892, c. 372, the policy was binding upon the company, and that therefore she cannot recover.   But if this statute, passed after the policy was issued, applies to the case, which we do not intimate, the policy is still void or voidable under the rules of the company, which require the examination form on the back of the application to be personally signed by the insured, and provide that, if it was not so signed, the policy shall be void.

All but one of the other instructions requested by the defendant were given in terms, with an addition which permitted the jury to find for the plaintiff if they found that she was innocent of any fraudulent intent and was induced to sign the application by Bannigan's fraudulent representations.   This addition to the instructions requested was warranted by the evidence, and was in accordance with our former decision.

The only other exception was to the refusal of the judge to rule that the plaintiff was presumed to know the defendant's rules and regulations.   These rules were not contained in the paper signed by her, and she testified that she did not know them

until she had made all the payments that she made at all. These rules were printed in a small receipt-book, which came into her possession after the policy was issued, and there is no presumption of law that she read them before making her payments.

*Exceptions overruled.*