### SUPREME LODGE KNIGHTS OF PYTHIAS v. NEELEY.

(Court of Civil Appeals of Texas. Feb. 1, 1911. On Motion for Rehearing March 22, 1911.)

1. INSURANCE (§ 730½,* New, vol. 7, Key No. Series)—BREACH OF AGREEMENT BY INSURER—REMEDY OF INSURED.

The act of a fraternal insurance order in inducing a member to surrender his certificate for a new one for a specified rate per month, and in refusing to issue the new certificate on the terms agreed on or to return the old certificate, gives the member a cause of action against the order.

2. INSURANCE (§ 730½,* New, vol. 7, Key No. Series)—BREACH OF AGREEMENT BY INSURER—REMEDY OF INSURED.

Where a life insurance company wrongfully cancels a policy, insured may enforce specific performance or he may tender his payments in accordance with the policy, so that his beneficiary may collect the face value of the policy, less the amount of premiums due, or he may treat the cancellation as a repudiation of the contract and recover his damages for breach of contract.

3. DAMAGES (§ 117*)—BREACH OF CONTRACT—MEASURE OF DAMAGES.

The measure of damages for breach of contract is the pecuniary loss sustained, in the absence of punitive damages and statutory penalties.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 285; Dec. Dig. § 117.*]

4. INSURANCE (§ 743*)—PREMIUMS PAID ON VOID POLICY—RECOVERY.

Where a life policy was void ab initio, the premiums paid, with interest thereon, were the measure of damages on cancellation.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1888; Dec. Dig. § 743.*]

5. INSURANCE (§ 730½,* New, vol. 7, Key No. Series)—WRONGFUL CANCELLATION OF LIFE POLICY—MEASURE OF DAMAGES.

The measure of damages for the wrongful cancellation of a life policy is the value of the policy at the time of its cancellation.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

**6. INSURANCE (§ 517*) — PAID-UP POLICY — PRESENT VALUE.**

The present value of a paid-up life policy is such sum as, at a reasonable rate of compound interest, will equal the face of the policy at the end of the period of expectancy of insured.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1303; Dec. Dig. § 517.*]

**7. INSURANCE (§ 237*)—PRESENT VALUE OF LIFE POLICY.**

The present value of a life policy, not paid-up, is the sum which, at reasonable compound interest, will equal the face of the policy at the end of the period of life expectancy of insured, less the premiums becoming due during that period, with similar interest thereon, provided insured is insurable; and if he is not insurable that fact may be shown, so that a greater premium would be required than that shown by the tables of life insurance.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 515; Dec. Dig. § 237.*]

**8. INSURANCE (§ 730½,* New, vol. 7, Key No. Series)—WRONGFUL CANCELLATION OF LIFE POLICY—MEASURE OF DAMAGES.**

Where a life policy was canceled by agreement between the parties and insured obtained a new certificate, which insurer wrongfully canceled, the measure of damages did not include the premiums paid on the first policy.

### On Motion for Rehearing.

**9. INSURANCE (§ 730½,* New, vol. 7, Key No. Series)—WRONGFUL CANCELLATION OF LIFE POLICY—MEASURE OF DAMAGES.**

Where a member of a fraternal insurance order was 42 years old, with a life expectancy of 26 years at the time of the wrongful cancellation of his certificate, the difference between the amount a reliable insurance company would issue a paid-up policy for $3,000, the amount of the policy on which insured was paying an annual premium, and the amount in cash such company would issue a policy for the same amount as the canceled policy on an insurable risk, aged 42 years, with interest from the date of the wrongful cancellation, was the measure of damages, for with such difference, plus what it would cost insured to carry out the contract, if not canceled, he could obtain an equally advantageous contract.

Appeal from District Court, Milam County; J. C. Scott, Judge.

Action by T. E. Neeley against the Supreme Lodge Knights of Pythias. From a judgment for plaintiff, defendant appeals. Reversed and remanded, and motion to certify to Supreme Court denied.

Monta J. Moore, P. T. Lomax, and C. K. Lee, for appellant. W. A. Morrison and A. E. Camp, for appellee.

JENKINS, J. Appellee brought this suit to recover damages on account of the wrongful cancellation of an insurance policy, claiming as his measure of damages the premiums paid by him with lawful interest thereon from the respective payments.

The undisputed facts show that the appellant is a fraternal insurance organization maintaining lodges in Texas, and has been since 1891. Appellee became a member of one of its subordinate lodges in 1891, since which time he has been, and still is, a member in good standing. In August, 1893, he became a member of appellant's Endowment Rank, and applied for and there was issued to him a certificate or policy of insurance for $100, payable at his death to the beneficiary therein named. Appellee paid the premiums on said policy at the rate of 85 cents per month for 29 months. In 1896, by agreement with appellant, he surrendered said policy and took out another policy for $3,000, in what was termed "4th class." On said $3,000 policy he paid the premium, $2.55 per month, for 72 consecutive months; at the end of said time the premium was increased to $3.75, which he paid for 80 consecutive months, including January, 1909. In January, 1909, he surrendered said fourth-class policy upon the representation of the agent of appellant that by so doing the appellant would issue him in exchange therefor a "5th class" policy for the same amount, at the rate of $5.40 per month. The rate fixed by appellant for appellee for a "5th class" policy for $3,000 was in fact, on account of appellee being in the saloon business, $6.45 per month; said business being rated by appellant as extrahazardous. This fact was not known to appellee and was overlooked by said agent. Appellee believed said statement as to the rate quoted him to be true, and would not otherwise have agreed to surrender said fourth-class policy for said fifth-class policy. Appellant issued a fifth-class policy to appellee for $3,000, and sent the same to its said agent, to be delivered to appellee, but when the same was received said agent and appellee, believing that a mistake had been made as to the rate, returned said policy for correction. Appellant declined to correct said policy. Correspondence in reference thereto ensued; appellee demanding either that the new policy should be issued in accordance with his agreement with said agent, or that his former fourth-class policy be returned to him. This correspondence continued for eight months; appellee in the meantime paying the monthly assessments of $6.45 per month "under protest." Appellee having refused to further pay the $6.45 assessment, appellant canceled his fifth-class policy. The fourth-class policy had been canceled when the fifth-class policy was issued. Appellant also refused to re-issue the fourth-class policy, except as of appellee's then age. Appellant having refused to correct said fifth-class policy or to return said fourth-class policy, appellee elected to treat said action as a repudiation of the contract, and brought this suit. Said premiums, together with 6 per cent. interest thereon from the respective dates of payments, aggregate $753.92, for which amount the court trying the same without a jury rendered judgment.

The court filed its conclusions of fact substantially as above set out, and its conclu-

sions of law as follows: "Under the above facts I conclude, as a matter of law, that the defendant has breached its contract of insurance without cause, and that plaintiff is entitled to his damages, and that the measure of damages in this case is the amount of premiums on all of said policies, together with 6 per cent. interest thereon from the respective dates of payments to this date, and that plaintiff should have his judgment accordingly." By appropriate assignment the appellant brings in question on this appeal the correctness of the court's conclusions of law, and the judgment rendered in accordance therewith.

1. There can be no question as to the correctness of the court's conclusion that the act of appellant in refusing to either issue the new policy on the terms agreed upon between its agent and appellee, or to return the old policy, gave appellee a cause of action against appellant. Lovell v. Ins. Co., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423.

2. When an insurance company wrongfully cancels a policy, the insured may take either of three courses: He may, by equitable proceedings, enforce specific performance; or he may tender his payments in accordance with the terms of the contract, in which event his beneficiary could collect the face value of the policy, less the amount of premiums due, upon the death of the insured; or he may, as did appellee in this case, treat such cancellation as a repudiation of the contract and recover his damage for breach of such contract. Speer v. Ins. Co., 36 Hun (N. Y.) 323; Day v. Ins. Co., 45 Conn. 498, 29 Am. Rep. 693; Standley v. Ins. Co., 95 Ind. 258; Niblack on Ben. Societies, § 280; Bacon on Ben. Societies, § 376.

3. We quote from appellee's brief as follows: "The decisions of the courts as to the measure of damages in this class of cases is, we admit, conflicting; but by far the greater number of the state courts hold, as do the Texas courts, that the proper measure of damages is the amount of premiums paid, with interest thereon from the date of payments." There is such a conflict, and it is irreconcilable; but we do not understand that the Texas courts can, in any proper sense, be said to have held as stated by appellee. Appellee cites, in support of his statement, A. L. of H. v. Batte, 34 Tex. Civ. App. 456, 79 S. W. 629, and Ins. Co. v. Wood, 57 S. W. 685. In the Batte Case the amount of the recovery does not appear to have been made an issue. The sole issue to which the attention of the court appears to have been called, and with which the opinion deals, was as to the right of the order to reduce the policy from $5,000 to $2,000, without the consent of the insured, and whether such attempted reduction amounted to a repudiation of the contract. The only reference to the amount of the recovery is in the statement of the case, as follows: "She (appellant) declined to pay any further assess-ments, and elected to treat such contract as rescinded, and on April 9, 1903, brought this suit in the district court of Milam county to recover back the premiums paid by her during her membership, amounting to the sum for which judgment was rendered for appellee." Nothing is said about interest on such premiums, which the courts sustaining appellee's contention hold the insured is entitled to recover. The court below held that the attempted reduction in the amount of the policy was unauthorized, and amounted to a repudiation of the contract, and this is all that this court can properly be held to have decided in affirming said judgment. In the Wood Case the insured gave his note for the first premium. A part of the contract of insurance was that the company was to appoint Wood as a member of the committee of reference. It breached the contract, and, having sold the note to an innocent purchaser, Wood brought suit to recover the amount of the note. This court held that he was entitled to such recovery. The measure of damages in the sense that that issue is presented in this case was not considered by this court. We think this is an open question in this state.

4. We do not agree with appellee that "the greater number of state courts" hold with his contention. Such seems to be the rule in North Carolina, Georgia, Pennsylvania, Ohio, and Missouri. However, if it was true that the "greater number" of courts in other jurisdictions had so held, we would not necessarily feel bound to follow them, as against a less number of courts holding otherwise. In such case it is safe to assume that the better reason is the better law, and as the law aims at the perfection of reason, if the matter is not stare decisis, and the matter not being settled by statute, the better reason is the law.

5. The reasoning of the courts holding that the premiums paid with the interest thereon is the proper measure of damages, where an insurance company has undertaken to repudiate its contract, is not at all satisfactory to our minds. We think much confusion on this subject would have been avoided, had the courts considered the fact that a suit upon such breach of contract is simply a suit for damages, and had they kept in mind the well-settled standard in all such cases. Punitory damages and penalties given by statute aside, there is no principle of law better settled than that the measure of damages is the pecuniary loss sustained. Mr. Sedgwick announces this well-settled principle of law in the following language: "In cases of civil injury and breach of contract, the declared object of awarding damages is to give compensation for pecuniary loss; that is, to put the plaintiff in the same position, as far as money can do it, as he would have been if the contract had been performed, or the tort not committed." Sedgwick on the Measure of Damages, vol.

1, § 30; Am. & Eng. Ency. Law, vol. 8, p. 632; Railway Co. v. Hill, 63 Tex. 385, 51 Am. Rep. 642; Smith v. Sherwood, 2 Tex. 460. All of the courts, we believe, except the North Carolina court, base their holding that the premiums paid, with interest on same, is the proper measure of damages upon the proposition that, inasmuch as the insured has not died, the company has been out nothing and the insured has received nothing. This assumed premise has been rejected by the majority of the courts, and is, to our minds, as baseless as that one has received no consideration for a premium paid for fire insurance, because his house has not burned. It is a well-established rule that, if a party sues for breach of an executory contract, he must account for the benefits, if any, which he has received under such contract. Richards v. Allen, 17 Me. 296. In Speer v. Ins. Co., 36 Hun (N. Y.) 323, the court said: "The recovery of the premiums and interest could be sustained only on the ground of a total failure of consideration. When the policy was valid up to the time of its cancellation, there is no such failure."

6. If the policy was void ab initio, the premiums paid, with interest thereon, is the correct measure of damages, for the reason that in such cases no services have been rendered and no benefits have been received. Fisher v. Ins. Co., 162 Mass. 236, 38 N. E. 503; Ins. Co. v. McCormick, 19 Ind. App. 52, 49 N. E. 44, 65 Am. St. Rep. 392; Ellis v. Friendly Ass'n, 16 Pa. Super. Ct. 607.

7. The North Carolina court (Strauss v. Ins. Co., 126 N. C. 971, 36 S. E. 352, 54 L. R. A. 605, 83 Am. St. Rep. 699) admits that the rule established by it, viz., recovery of the premiums, with interest, falls short of theoretical justice, and excuses itself for this rule on the ground that it is impracticable to ascertain the value of the policy canceled. A knowledge of the basic principles of life insurance leads, we think, to a different conclusion. We are impressed with the statement of the Supreme Court of Alabama on this subject. It says: "The damages are liquidated, being capable of the most accurrate and certain mathematic ascertainment. The legal measure of such damages is the surrender, or equitable value, of the policy, calculated on the basis of the American Table of Mortality, of which judicial notice will be taken by the courts." McDonnell v. Ins. Co., 85 Ala. 408, 5 South. 120.

8. Appellee cites Niblack on Ben. Societies, § 280. Reference to section 282 will indicate that this author failed to distinguish between cases where the risk attached and where it did not. At any rate, his citation of but one case in support of his text, and that a case in which the measure of damages was not made an issue, shows a lack of investigation on his part. Appellee also cites Bacon on Ben. Societies, § 376. This author's text is not well sustained by his citations.

He cites cases from North Carolina, Georgia, and Missouri which sustain him; but he also cites in support of his text cases from New York, Indiana, Massachusetts, and Kansas which not only do not support his text, but hold directly the reverse. This author seems to be aware that there are authorities that do not sustain his statement of the law, for he says, "This measure of damages has been doubted," and cites two cases in a footnote to this statement. A more careful research would have shown him that there were many cases by the most eminent courts of this country which do not "doubt" the correctness of the measure of damages as stated by him, but directly condemn it. As showing how inaccurate this author is in his citation of authorities, we quote from some of the opinions cited by him in support of his text, but which hold directly to the contrary: "The measure of damages would be the cash surrender value of the policies." Ins. Co. v. McCormick, 19 Ind. App. 52, 49 N. E. 44, 65 Am. St. Rep. 392. "The defendant carried the insurance upon the life of plaintiff's husband for six years and earned the premiums, and the plaintiff is not entitled to recover them back." McElwain v. Ins. Co., 50 App. Div. 63, 63 N. Y. Supp. 295. In Whitehead v. Ins. Co., 102 N. Y. 143, 6 N. E. 267, 55 Am. Rep. 787, it was held that the measure of recovery was the face value of the policy, less the amount of the unpaid premiums. See, also, citation from Barney v. Dudley in subsequent portion of this opinion. Other cases cited have no application. Fisher v. Ins. Co., 162 Mass. 236, 38 N. E. 503, was a case where the policy was void ab initio. Ins. Co. v. Curry, 115 Ky. 100, 72 S. W. 736, 61 L. R. A. 268, 103 Am. St. Rep. 297, involved only the question of the right of the company to forfeit a policy on which the premiums had been paid, by reason of failure to pay interest on a loan to which the policy was collateral.

9. We doubt if the cases holding that the premiums paid, with interest on same, is the measure of damages, where the contract has been wrongfully repudiated, is satisfactory in those jurisdictions where the same has been held, though the courts there may feel constrained to follow them. In Smith v. Ins. Co., 64 Mo. 333, the Supreme Court of Missouri said: "It will be seen that the petition in this case is not to enforce the contract of insurance, but to claim damages for its dissolution without justifiable cause;" and the damages claimed and awarded were the value of this policy at the date of its dissolution by the company. The judgment rendered on this basis was affirmed. In the case of Rumbold v. Ins. Co., 7 Mo. App. 72, 73, the policy provided that the insured might surrender the same and receive in lieu thereof a paid-up policy. The company refused to comply with this contract, and the insured brought suit for damages. The trial court instructed the jury that plain-

tiff's measure of damages was the premiums paid, with interest on same. The appellate court, in its opinion reversing the judgment, said, among other things: "The insurer bore the risk. * * * It is clear that the measure of damages here was the value of the new policy at the time of the demand and refusal. * * * On such a policy the value was clearly calculable." The leading Missouri case in support of the proposition that the premiums, with interest, is the measure of damages, is McKee v. Ins. Co., 28 Mo. 383, 75 Am. Dec. 129. In the Rumbold Case the court referred to the McKee Case in the following language: "Even if that case could, in view of later decisions, be considered as laying down a correct rule."

It is true, in the Rumbold Case the court bases its decision on the ground that it was the insured who voluntarily put an end to the policy by refusing to any longer pay the premiums thereon, but, inasmuch as it is the law that in every case where an insurance company wrongfully attempts to cancel a policy the insured may keep his policy alive by tendering the premiums according to the contract, it might, with equal reason, he said that in all such cases it is the insured who voluntarily puts an end to his policy. In either case the suit is upon breach of the contract, and we see no reason why there should be a different standard of damages. In the case of Ins. Co. v. Shultz, 82 Pa. 52, where the facts were similar to the Rumbold Case, supra, the Supreme Court of Pennsylvania attempted to draw a distinction between a case of rescission of contract and one of breach of contract. If the company has undertaken to wrongfully rescind or forfeit the policy, it is a breach of the contract, and the refusal to issue a paid-up policy, as provided in the contract, can be no more than this. To our minds it is a distinction without a difference, and indicates that the courts of those states are not satisfied with the rule on this subject which they have heretofore announced.

In all other cases of breach of contract the pecuniary loss is the measure of damages; why should it not be in this? If I contract with a carpenter to build me a house for the agreed consideration of $1,000, and he refuses to do so, and it would cost me $1,200 to have it built in the manner contracted for, I can recover $200. In other words, I am entitled to the value of the thing contracted for, less what it would have cost me, had the contract been carried out. But if the carpenter has performed his contract in part, a proper deduction must be made. Why should not these well-settled and eminently just rules as to the measure of damages for breach of contract be applied to life insurance?

10. We hold that the proper measure of damages for the cancellation of a life insurance policy is the value of such policy at the time of such cancellation. The following authorities are referred to as sustaining this holding: Day v. Ins. Co., 45 Conn. 498, 29 Am. Rep. 693; Ins. Co. v. McCormick, 19 Ind. App. 53, 49 N. E. 44, 65 Am. St. Rep. 392; Speer v. Ins. Co., 36 Hun (N. Y.) 323; Farley v. Ins. Co., 41 Hun (N. Y.) 304; McElwain v. Ins. Co., 50 App. Div. 63, 63 N. Y. Supp. 293; Ebert v. Ins. Co., 81 Minn. 116, 83 N. W. 506, 84 N. W. 457; Whitehead v. Ins. Co., 102 N. Y. 143, 6 N. E. 267, 55 Am. Rep. 787; Lovell v. Ins. Co., 111 U. S. 267, 4 Sup. Ct. 390, 28 L. Ed. 426, 427; Standley v. Ins. Co., 95 Ind. 258; Abell v. Ins. Co., 18 W. Va. 400; Ins. Co. v. Baker, 85 Ill. 410; Ins. Co. v. McHugh, 7 Neb. 66; Barney v. Dudley, 42 Kan. 212, 21 Pac. 1079, 16 Am. St. Rep. 476; Ins. Co. v. Statham, 93 U. S. 24, 23 L. Ed. 792; Ins. Co. v. Kelso, 16 Kan. 481; McDowell v. Ins. Co., 85 Ala. 401, 5 South. 120; Watts v. Ins. Co., 16 Blatchf. 231, Fed. Cas. No. 17,294; Ins. Co. v. Heidel, 8 Lea (Tenn.) 488; Ins. Co. v. Weck, 9 Ill. App. 358.

11. What is the present value of a life insurance policy? If the policy was paid up, the answer would be obvious. It would be such a sum as, at a reasonable rate of compound interest, would equal the face of the policy at the end of the period of expectancy. If not paid up, its value can be computed with equal certainty. It would be a like sum, less the premiums which would become due during the period of its expectancy, with compound interest thereon. This, of course, presupposes that the party is still insurable. In line with the statement of the Supreme Court of Alabama, as hereinbefore quoted, and also with the decisions in other states, the Supreme Court of Kansas in Barney v. Dudley, 42 Kan. 212, 21 Pac. 1079, 16 Am. St. Rep. 476, said: "The measure of damages is the difference between the rate of the premium paid for the old insurance and what another company of equal credit and standing would charge to issue a new policy on the same life, calculated on his expectancy." In other cases it is said that the proper measure of damages is the difference between the premiums paid and the cost of carrying the insurance, with interest thereon. These are but methods of ascertaining the value of the policy at the time of its cancellation, and are equivalent to saying that the damage recoverable is what it would cost to carry the contract into effect, which, in all cases of breach of contract, is the true measure of damages.

12. The North Carolina court adverted to the fact that the insured may be in ill health, or not insurable at all. If, in such a case, the measure of damages here proposed cannot be applied by reason of its uncertainty, this affords no excuse for not applying it in cases where such facts are not shown to exist. But in such supposed case, the value of the policy can be ascertained, from the opinion of experts, with as much certainty, if not greater, as in the majority of cases

where damages are allowed upon expert testimony. "If the insured is in ill health or not insurable, this might be shown, and that a greater premium would be required than that shown by the tables of life insurance." Dudley v. Ins. Co., supra. To the same effect is the opinion of the court in Ebert v. Ins. Co., 81 Minn. 16, 83 N. W. 506, 84 N. W. 457. See, also, Ins. Co. v. Fitzgerald, 1 White & W. Civ. Cas. Ct. App. (Tex.) § 1348. In such cases the amount of damages would be a fact to be determined by the jury, not arbitrarily, but upon the evidence of experts, as applied to the well-known principles of life insurance.

13. Appellant also assigns as error the conclusion of the court that appellee was entitled to recover the premiums paid on the $1,000 policy. We think that the court erred in this conclusion, in any event, for the reason that the $1,000 policy was canceled by agreement between the parties, and presumably all rights thereunder were adjusted. The fact that the insured is said to have been transferred into a different class does not prevent the $3,000 policy from being a new contract.

For the reasons hereinbefore indicated, this case is reversed and remanded.

Reversed and remanded.

### On Motion for Rehearing.

Appellee has filed a motion for a rehearing, and also a motion that this case be certified to the Supreme Court. The ground for the latter motion is that our opinion herein is in conflict with the opinion of this court in A. L. of H. v. Batte, 34 Tex. Civ. App. 456, 79 S. W. 629; Same Appellant v. Hefley, 79 S. W. 1199; Same v. Oxenford, 79 S. W. 1199; Same v. Cochran, 81 S. W. 1276; Same v. Repsdorph, 81 S. W. 1277; Same v. Sweiss, 81 S. W. 1277; and Same v. Williford, 81 S. W. 1278. These were companion cases from the same court, in which the parties were represented by the same attorneys. In all of these cases, except the Batte Case, memorandum opinions were rendered; the court saying that they involved the same questions of law.

In our opinion herein we said: "In the Batte Case the amount of the recovery does not appear to have been made an issue." Since appellee's motion for a rehearing has been filed herein, we have examined the record in the Batte Case and find that we were correct in the above statement. The judgment in that case was for a certain sum, without mention as to how the same was arrived at. Appellant made no motion for a new trial; the case having been tried before the court. Its assignments of error raises only the issues as to appellant's right to reduce the policy from $5,000 to $2,000, the acquiescence of appellee in such change in its by-laws, forfeiture of the policy by appellee's failure to pay premiums, and the statute of limitation. No error is assigned as to the amount of the judgment, nor as to the measure of damages, and no reference is made in appellant's brief to these matters. This court having found, as we think rightfully, against appellant on the errors assigned, could not do otherwise than affirm the judgment, however erroneous the measure of damages adopted by the trial court may have been, and however excessive the judgment may have been by reason of such erroneous measure of damages. For the reason that there is no conflict between the opinion in this case and in the Batte Case, we decline to certify this case to the Supreme Court.

Appellee insists, and perhaps not without reason, that in quoting with approval the language of a number of courts with reference to the proper measure of damages, we have not made it clear as to just what is the proper method of arriving at the damages recoverable in this case. For instance, the statement in the Alabama case that "the legal measure of damages is the surrender or equitable value of the policy" means the present value of such policy to the insured under his contract; in other words, the present value of his insurance contract. We attempted to illustrate this in the supposed contract with the carpenter, from which we deduced the conclusion that upon breach of contract one is "entitled to the value of the thing contracted for, less what it would have cost him, had the contract been carried out." Applying this to a life insurance policy which has been wrongfully canceled, the insured is entitled to present value of the policy, to be ascertained as indicated in the eleventh paragraph of our opinion herein as to a paid-up policy, less the present value of the premiums which would have been paid under the contract, had the same been carried out.

We will give an illustration, applicable to the very facts of this case which will determine the amount that appellee is entitled to recover, and which will meet the demands of the standard herein laid down, without the necessity of figuring interest or discount. Assuming, as appellee states in his motion, that he was 42 years old and had an expectancy of 26 years at the time his policy was canceled, any actuary, or perhaps any competent insurance agent, with the aid of the tables furnished him, can tell for what amount in cash a reliable insurance company would have issued a paid-up policy for $3,000, the amount of the policy herein on which the insured was paying an annual premium of $45, as was the case as to the policy canceled, and for what amount in cash such company would issue a policy for the same amount as the canceled policy, on an insurable risk, aged 42. The difference between these sums, with interest from the date of the wrongful cancellation, is the appellee's measure of damages, for with this difference, plus what it would have cost him to have

had the contract carried out, had the policy not been canceled, he could have obtained as equally advantageous a contract or policy.

This being a case of first impressions and there being irreconcilable conflicts in the decisions on this subject in other jurisdictions, we have deemed it proper to comply with appellee's request to make this further explanation and illustration of our holding in this case. ·

The motions for rehearing and to certify are overruled.    ·