CAPITOL LIFE INS. CO. OF DENVER, COLO., v. DRISCOLL.    (No. 773.)

(Court of Civil Appeals of Texas. El Paso. Dec. 19, 1917. Rehearing Denied Jan. 10, 1918.)

1. INSURANCE ⊸128(1) — LIFE INSURANCE —"JOHN DOE" APPLICATION—EFFECT.

Where plaintiff made a "John Doe" application for life insurance, and defendant accepted it and instructed him to make formal application in his own name upon which the policy would be issued, there was a contract to insure.

2. INSURANCE ⊸128(2)—LIFE INSURANCE— "JOHN DOE" APPLICATION—EFFECT.

Allegations that plaintiff made a "John Doe" application and was instructed to make formal application and he would be accepted, that plaintiff submitted to examination and was passed, and that he was refused solely on account of facts disclosed by the "John Doe" application, sufficiently show that the examination conformed to the "John Doe" application.

3. INSURANCE ⊸128(1)—LIFE INSURANCE— CONSIDERATION.

Submission to physical examination by one who had made a "John Doe" application was sufficient consideration to support an agreement to issue policy.

4. INSURANCE ⊸128(1)—LIFE INSURANCE— CONTRACT—EXECUTION.

Where plaintiff made a "John Doe" application for life insurance, and defendant instructed him to make formal application and the policy would be issued, and plaintiff submitted to examination but defendant refused to issue policy except at accelerated rate, there was a breach of contract to insure, and defendant was liable in damages.

5. DAMAGES ⊸120(1) — BREACH OF CONTRACT FOR INSURANCE.

Where an applicant contracts for a certain character of insurance policy and such policy is refused, and he can then only obtain a like policy at an increased annual premium, the proper measure of damages is the difference between the premiums of the policy contracted for and the policy he can get.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by J. I. Driscoll against the Capitol Life Insurance Company of Denver, Colorado. Judgment for plaintiff, and defendant appeals. Affirmed.

F. C. Knollenberg, of El Paso, for appellant. J. F. Woodson, of El Paso, for appellee.

HIGGINS, J. Appellee, Driscoll, brought this suit to recover damages arising from the breach of a contract alleged to have been made by appellant to enter into a contract of insurance upon his life.

Succinctly stated, the allegations of the petition show: That in November, 1913, Mr. Lay, the local agent of defendant, solicited plaintiff to take a life insurance policy with the defendant company. Plaintiff told the agent he desired to procure insurance, but was afraid he could not do so as he had once been declared to be afflicted with a disease which caused insurance companies to decline risks such as plaintiff would be. The agent suggested to plaintiff that he make out what is known as a "John Doe" application for a policy of insurance, such application to state the facts in regard to the disease with which he had been afflicted, and the agent represented that he would submit the application to the company, and, if it would accept plaintiff as a risk with knowledge of the facts stated in such application, then plaintiff could procure insurance with the defendant. That, acting upon the suggestion of the agent who was authorized to make such suggestion and authorized to induce plaintiff to make said application, plaintiff made out said John Doe application for a policy of insurance for $3,000, in which application he stated the conditions in regard to the disease with which he had been told he was afflicted. That it is usual and customary for life insurance companies to have said applications so made out, and, if the risk covered by the application was as therein represented, then the policy of insurance would be issued to the real applicant if said facts were as stated in the application, or said policy would be refused, as the company might see fit. That said application was delivered to the agent and by the agent delivered to the proper officers of the company, and, after the receipt of such application, the defendant agreed to accept plaintiff as a risk and to issue to him a policy for $3,000 on his life to be paid for in 20 annual installments of $103.77 each, plaintiff being at that date of the age of 30 years, and said company agreeing to accept this plaintiff as a risk, if the facts in regard to his previous health and physical condition were as stated in said application and if he would pass the medical examination required. That, after being advised that he would be accepted as a risk as mentioned above, plaintiff submitted to a medical examination by the company's physician, and the physician passed plaintiff for insurance. Plaintiff made out a formal application to the defendant after being advised that he would be accepted as a risk, and, upon making such formal application, plaintiff paid to the company through the agent, Lay, the sum of $10 as a part of the first annual premium. That, after said formal application had been made and the medical examination had been made, plaintiff was advised by defendant that it would issue a policy for $3,000, but at the rate required for persons of the age of 41 years, at an annual premium of $133, or a difference of $29.23 to be paid for 20 years, and defendant refused to issue a policy for $3,000 based upon the real age of plaintiff and upon which the premium would have been $103.77 for 20 years. Plaintiff refused to accept the policy tendered and demanded the policy contracted for and tendered the first year's premium, which tender was refused, and the company refused to deliver the policy agreed upon. That plaintiff only

submitted to the medical examination upon the representation and agreement of the defendant after plaintiff had submitted his John Doe application that the policy of insurance would be issued to him for $3,000 at the annual premium of $103.77, and plaintiff would not have submitted to such an examination unless the defendant had led him to believe that his application would be accepted if he could pass the medical examination required. That he did pass the medical examination, but the policy was refused by defendant solely on account of facts stated and made known to the defendant in the John Doe application. Plaintiff could not now obtain a policy for $3,000 or any other sum except at an advanced age of 10 or 11 years over his real age, except at an additional premium of $29.23 per year; whereby plaintiff had been damaged to the extent of the difference in the 20 annual premiums of the policy which he could obtain and the policy which defendant had agreed to deliver, such difference being in the sum of $29.23 to be paid for 20 years, amounting in the aggregate to the sum of $584.60, for which amount plaintiff prayed judgment. There was a trial without the aid of a jury and judgment rendered in Driscoll's favor for $584.60. The insurance company appeals.

Findings of fact and conclusions of law were filed by the trial court as follows:

"Findings of Fact.

"(1) Some time in October, 1913, the plaintiff was a resident of El Paso county, Tex. H. A. Lay, during that month and since was and has been agent of defendant at El Paso, Tex., being the head man of defendant at said city, with other agents under him, and he being authorized to solicit insurance for defendant, and defendant being a nonresident corporation.

"(2) During October or November, 1913, H. A. Lay, agent for defendant, solicited the plaintiff to take a life insurance policy with defendant company. Plaintiff advised Lay he wanted insurance, but on account of previous condition of his health he was afraid to apply for fear he would be rejected, which would place him at a disadvantage on future applications for insurance. It was agreed between plaintiff and Lay that plaintiff would take a John Doe application or medical examination to defendant, same being an unsigned application or examination, the maker not being known to the company to whom made. Said John Doe examination was made by plaintiff in October or November, 1913, to D. H. Hoffecker, El Paso physician of defendant (Exhibit C). Such examination was made at the request of agent Lay for the defendant, the plaintiff appearing before Dr. Hoffecker and furnishing the information for such John Doe examination.

"(3) In 1906 plaintiff had been examined by a physician in Italy, and advised he had one lung affected. Plaintiff came to the United States, and in the latter part of 1907, or early part of 1908, Dr. Crouse, of El Paso, Tex., examined plaintiff and advised him he was cured.

"(4) In the John Doe examination plaintiff informed Dr. Hoffecker that he had contracted a cough in 1906, came to El Paso in 1907, and got over it in three months, and also advised Dr. Hoffecker that a doctor had told him in 1906 that the upper part of one lung was involved; and plaintiff, during such medical examination, told Dr. Hoffecker that Dr. Crouse

had been his physician treating him for the cough and lung trouble.

"(5) The John Doe examination showed that plaintiff, in 1906, was advised of the affection of one lung, also that plaintiff had had a disease of the lung, and also that he had had a chronic cough.

"(6) I find that the statement that plaintiff had had a disease of the lung and chronic cough in the John Doe examination was sufficient to advise defendant he had had or probably had tuberculosis; but I also find that the defendant, when it received the John Doe examination, had ample information therein to advise it of that fact, and also that defendant's examining physician, Dr. Hoffecker, knew from plaintiff's statements made to him at the time of the John Doe examination that Dr. Crouse had treated plaintiff, and defendant could have ascertained plaintiff's entire condition by communicating with Dr. Crouse, both Drs. Crouse and Hoffecker residing in the city of El Paso, Tex. And I further find that the plaintiff made no fraudulent concealment of any fact regarding his present or past condition, and divulged to the defendant's examining physician all information that the plaintiff possessed.

"(7) Plaintiff made his John Doe examination on a request for a 20-payment policy in defendant company for $3,000, at an annual premium of $103.77; the age of plaintiff at the time of such John Doe examination being 30 years.

"(8) The agent of defendant got from Dr. Hoffecker the John Doe examination or application (Exhibit C, except as to date). Same was sent to defendant at its home office in Denver, Colo., the latter part of October or early part of November, 1913. Shortly thereafter, H. A. Lay, agent of defendant, advised plaintiff that defendant had requested plaintiff to submit his regular examination for insurance, and Agent Lay had been requested by said defendant to so notify plaintiff; that the defendant had requested that plaintiff submit his regular application; that where a John Doe application or examination is made for insurance, and the company to which it is made will accept the risk on the facts stated therein, such company requests the regular application, and, if it will accept the risk outlined in the John Doe application, no regular application is called for. Upon receiving such request the plaintiff then made a formal application for $3,000 policy, 20 payment, with defendant, at an annual premium of $103.77 (Exhibit A), being the same kind of policy upon which the plaintiff had made his John Doe application or examination; and plaintiff also underwent another medical examination by the company physician, which examination showed substantially the same as the John Doe examination. It is the custom for insurance companies, when they receive the John Doe application or medical examination, to either accept or reject the risk as shown by such examination or application, and, if the risk is accepted, to request the risk to make his formal application.

"(9) After the plaintiff had made his formal application and medical examination, as requested by plaintiff, the defendant refused to deliver the policy for which he had applied and for which he had made the John Doe application. The plaintiff had paid $10 to H. A. Lay, the agent of the company, to be applied on the first annual premium of the policy applied for.

"(10) Plaintiff was still insurable on refusal of the company to issue the policy applied for, but only at an advanced age. The difference between the annual premium on the policy he made his John Doe application for, and the only policy he could get, was $29.23 per year for 20 years.

"(11) Plaintiff demanded the policy he applied for and tendered the full first year's premium therefor.

"(12) Plaintiff was advised by the agent of defendant that his John Doe application had been accepted and that the policy would be issued on formal application. The formal application was thereafter made and formal examination and report made.

"(13) After defendant had refused to deliver policy to plaintiff for which plaintiff had made John Doe application, the only similar policy plaintiff could get in a solvent company would be payable in 20 annual premium payments of $133 each, being the accelerated policy issued to a person 31 years of age but based on an age of 41 years.

"(14) From all of which I find that plaintiff applied (by John Doe application) for a $3,000 policy in defendant company, payable in 20 annual premiums¹ of $103.77 each; that defendant agreed to deliver said policy to plaintiff; that thereafter defendant refused to deliver such policy, although plaintiff demanded it and made proper tender of premium."

"Conclusions of Law.

"I therefore conclude from the foregoing facts:

"First. That the plaintiff was entitled to receive from the defendant in the latter part of 1913 a policy of insurance on his life in the amount of $3,000; said policy to be fully paid up in 20 years at an annual premium of $103.77, which policy the defendant refused to deliver.

"Second. That on account of the defendant's breach of its contract to deliver said policy the plaintiff is entitled to damages from the defendant.

"Third. That plaintiff's measure of damages is the difference between what he would have had to pay for the policy promised, and what he would have to pay for a similar policy at the accelerated age, which would be 20 times the difference in the annual premiums, or $584.60.

"Fourth. Judgment was therefore accordingly entered for the plaintiff against the defendant for said sum of $584.60."

An examination of the statement of facts discloses that the findings of fact are sustained by the evidence, and such findings are approved.

[1] The first and second assignments complain of the overruling of exceptions to the petition based upon the theory that the petition failed to show a contract made by defendant to deliver a policy of insurance. The petition is not subject to the objection urged. It shows the submission of a John Doe application by plaintiff at the solicitation of defendant's agent and the acceptance by defendant of this John Doe application, with instructions to plaintiff to make out a formal application in his own name, upon which the policy would be issued. This shows an agreement to issue a policy upon the formal application which was made by plaintiff.

[2] Another assignment complains of the overruling of a special exception to the petition upon the ground that it does not allege that the medical examination conformed to the John Doe application. This is without merit, because the petition distinctly alleges that, after being advised by the company that he would be accepted as a risk, plaintiff submitted himself to a medical examination by the regularly employed physician of defendant, and said physician and medical examiner of defendant passed the

plaintiff for insurance as desired by plaintiff. In another paragraph of the petition, it is again alleged:

"This plaintiff did pass said medical examination required by said company, but said policy was refused by the defendant company solely on account of facts which were stated and made known to said defendant company in the John Doe application, hereinbefore mentioned, and for no other reason."

These allegations show that the plaintiff had satisfactorily passed the medical examination required by the defendant company.

[3] Another exception complains of the sufficiency of the petition upon the ground that a valid consideration for the policy was not alleged. The petition alleges that plaintiff submitted to the medical examination only upon the representation and agreement of the defendant, after the submission of the John Doe application, that the policy of insurance would be issued to him for $3,000, and that plaintiff would not have submitted to such examination unless the company had led him to believe that his application would be accepted, if he could pass the medical examination. The submission by plaintiff to the medical examination which he would not have done except for the representation and agreement of the company to issue the policy was a sufficient consideration to support the agreement of the company to issue a policy. For which reason, this exception, likewise, is without merit.

The remaining 22 assignments are all directed against the trial court's findings and conclusions and the measure of damage applied. We will indicate our view of the controlling questions in the case, which will dispose of these remaining assignments.

[4] The plaintiff was solicited to take insurance, and reluctantly consented to do so, feeling that he had been previously afflicted with a disease (tuberculosis) which might preclude the acceptance of his application for insurance, and, realizing that the refusal of one company to accept his application would be to his disadvantage upon applications made to other companies in the future, he pursued the course usually pursued by insurance companies under those circumstances, viz. the use of a John Doe application, which states his condition and which application is submitted to the company. If the company will take the risk on the John Doe application, a formal application is then made containing the same facts, and, as a matter of course, the policy is issued. The John Doe application was made to the agent of the company. He submitted to the medical examination and the application was presented to the company. Plaintiff was then in effect advised by the agent of the company that his John Doe application had been accepted, and, acting upon that advice, he submitted to another medical examination and made formal application for a policy. The agent admits that when he told the

plaintiff his John Doe application had passer muster that meant to the plaintiff that he was accepted as a risk. Mr. Lay, the agent, testified that, after the John Doe application was made and sent in, he went to Driscoll's office and told him that the company had instructed him to have plaintiff examined upon a regular application, which meant, according to the usual custom with all insurance companies, that the John Doe application had passed muster. Dr. Worsham, a witness for the defendant and medical director of the Two Republics Life Insurance Company, testified that the insurance company determines from the John Doe application whether or not it will accept or reject the risk on a regular application, and where they accept the John Doe application they should issue a policy on a regular application; that it is the universal custom, where a company has agreed to issue a policy on a John Doe application, the man then goes and submits to a medical examination again and makes his regular application, and, if it is identical with the John Doe application and nothing is left out, he gets his insurance. If the insurance company, with the same facts shown on the John Doe application, accepts the risk, it is customary to accept a regular application. It appears that after plaintiff had made his formal application, as requested by defendant, the defendant refused to deliver the policy for which he had applied and for which he had made the John Doe application. Plaintiff was still insurable on the refusal of the company to issue the policy applied for, but only at an advanced age. The difference between the annual premiums on the policy he made his John Doe application for and the only policy he could get was $29.23 per year for 20 years. Plaintiff demanded the policy he had applied for and tendered the full first year's premium. It will therefore be seen that plaintiff made a John Doe application, and defendant thereafter requested him to make a formal application which he did; the same conforming in all respects to the facts stated in the John Doe application. The company refused to deliver the policy called for by the John Doe application, plaintiff still insurable, but only at an advance of premiums of $29.23 per year for 20 years. Under these facts, the court properly found that defendant had agreed to execute and deliver to the plaintiff the policy called for in the John Doe application, and, upon its failure so to do, defendant became liable in damages for the breach of its contract.

It is not a question of the authority of the local agent, Lay, as is urged in the eighth assignment, for the reason that the agent, Lay, has not pretended to agree to issue a contract or to change any of the conditions thereof. He simply places the facts before the company itself for action by it, and the company, having had the facts presented to it by the John Doe application, has accepted the risk and agreed to issue the policy upon the formal application being made. The company is in a different position to that occupied upon an ordinary application for a policy. If Driscoll had made an application for insurance without having made a previous John Doe application, the company would have been in a position to accept or reject his solicitation for insurance. But here, it already had the facts as to the risk prior to the making of the formal application. Having that knowledge, and with the John Doe application before it, when it had plaintiff to make a regular application, it was in the attitude, according to the understanding and custom of insurance companies, of having accepted the John Doe application for insurance, and, when Driscoll complied with its instructions by making a formal application, he was in the attitude of having accepted the proposal of the company to issue to him a life insurance policy. This brings us to the question of the measure of damages.

[5] Where an applicant contracts for a certain character of insurance policy and such policy is refused, and he can then only obtain a like policy at an increased annual premium, the proper measure of damages, we think, is the difference between the premiums of the policy contracted for and the policy he can get. Supreme Lodge v. Neeley, 135 S. W. 1046; Provident, etc., v. Ellinger, 164 S. W. 1024. This is the measure applied by the trial court in this case and was the proper one.

There is no merit in the contention that there was no evidence that plaintiff suffered any damages as a result of the breach of the contract to deliver the policy contracted for. The court found that the only similar policy that the plaintiff could get in a solvent company would be an accelerated policy issued to a person 31 years of age and based on an age of 41 years, at a higher premium. Summing up the whole case, it may be said that the trial court's findings and the evidence show that, upon plaintiff's John Doe application, the defendant company agreed to deliver the policy applied for upon a formal application therefor being made; that defendant breached that contract, for which it became liable in damages in the sum awarded by the trial court.

The judgment is therefore affirmed.

WALTHALL, J., did not sit, being absent on committee of judges assisting the Supreme Court.